[No. 54125-6. En Banc. April 14, 1988.]

RICHARD GRIMWOOD, *Petitioner,* v. UNIVERSITY OF PUGET SOUND, INC., *Respondent.*

*Steven L. Larson,* for petitioner.

*Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* by *James F. Henriot* and *James M. Hushagen,* for respondent.

BRACHTENBACH, J.—This case involves an action for damages resulting from plaintiff's termination from employment by defendant University of Puget Sound, Inc. Plaintiff alleged: (1) age discrimination in violation of RCW 49.60.180(2); (2) breach of contract of employment; and (3) wrongful discharge. The trial court granted defendant's motion for summary judgment. The Court of Appeals affirmed by an unpublished opinion. *Grimwood v. University of Puget Sound, Inc.,* noted at 48 Wn. App. 1012 (1987). We affirm.

Plaintiff was first employed by defendant UPS in 1968; ultimately he became Director of Food Services. In March

1984, at age 61, UPS discharged him. Plaintiff challenged his termination through UPS personnel administrative procedures. He contended he was discharged without just cause and as a result of age discrimination. The appeal committee unanimously found no merit in either claim, affirmatively finding substandard job performance. Plaintiff subsequently filed suit in superior court.

UPS had given defendant a 2–page termination notice. It detailed plaintiff's efforts to terminate a special meal program which he had agreed to institute. Plaintiff's actions were described as a serious error causing negative student reaction, done without proper consultation with plaintiff's superior. The notice described the incident as a serious form of noncooperation. It referred to a September 1983 memorandum sent to plaintiff, which had also warned him of noncooperative behavior and other job performance deficiencies.

That September 1983 memorandum was entitled "Need to Improve Job Performance." The memorandum referred to: (1) plaintiff's failure to notify and explain to an employee a change in her work schedule; (2) plaintiff's failure to complete seven probationary employees' performance review forms (a similar failure had been set forth in writing 5 months earlier); and (3) six separate incidents in which employees under plaintiff's supervision had raised personnel problems, but refused to approach plaintiff for fear of retaliation or "gruff, short and negative responses." Those employees had abandoned their complaints and asked for anonymity. The memorandum concluded:

> You have been warned repeatedly about your substandard performance in personnel management and about the unacceptability of noncooperative behavior.
>
> I consider repeated instances of ineffective communication with employees, failure to complete probationary reviews and annual performance appraisals in a timely fashion, as well as repeated complaints about your uncooperative behavior or attitude to be serious. Further substandard performance in any of these areas will be

cause to dismiss you from employment with the University. As you know, I am available to assist you in identifying the kind of behavior I expect of the Food Service Director if that is not clear to you. I will be available to discuss this memorandum with you at your convenience.

Please feel free to share your comments with me in person or in writing. Sign the enclosed copy of this memorandum and return it to me.

Clerk's Papers, at 104–05.

This memorandum had been preceded by a July 1983 supervisor's memorandum to plaintiff entitled "Cooperation." Before describing in detail a specific incident, it stated: "I have discussed your need to be cooperative at all times with students, faculty, and staff. I have cited examples of uncooperative behavior of yours in your appraisals." Clerk's Papers, at 100. These memoranda were made part of defendant's affidavit in support of defendant's summary judgment motion. In addition, defendant set forth relevant portions of plaintiff's deposition, described hereafter.

Plaintiff's counter affidavit did not dispute the factual contents of the defendant's affidavit or the deposition. Instead, plaintiff attached numerous letters of praise from users of food services, a copy of his June 1983 performance appraisal and a copy of portions of UPS's personnel manual. Referring to the memoranda and incidents described therein he stated: "Those incidents are nothing but pretexts." Clerk's Papers, at 121. One incident he described as "much ado about nothing"; another as "equally petty"; that another "exaggerates a minor misunderstanding" concluding that "[a] phone call to me would have solved the problem. Instead [the supervisor] blew the matter out of all proportion in an attempt to manufacture grounds for terminating my employment." Clerk's Papers, at 122. Plaintiff's affidavit further stated that "U.P.S. had no valid reason for being dissatisfied with my job performance," Clerk's Papers, at 120, "I was not 'uncooperative' and my job performance was not 'substandard,'" Clerk's Papers, at 121.

## I
### STANDARD OF REVIEW

Because plaintiff challenges the trial court's grant of summary judgment in defendant's favor, we must measure the evidence which plaintiff contends raises a genuine issue of material fact for trial.

■ CR 56(e) is explicit in its requirements which serve the ultimate purpose of a summary judgment motion. Affidavits (1) must be made on personal knowledge, (2) shall set forth such facts as would be admissible in evidence, and (3) shall show affirmatively that the affiant is competent to testify to the matters stated therein. Further,

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

CR 56(e).

It is apparent that the emphasis is upon *facts* to which the affiant could testify from personal knowledge and which would be *admissible in evidence*. Thus, there is a dual inquiry as to whether an affidavit sets forth "material facts creating a genuine issue for trial": does the affidavit state material facts, and, if so, would those facts be admissible in evidence at trial? If the contents of an affidavit do not satisfy both standards, the affidavit fails to raise a genuine issue for trial, and summary judgment is appropriate.

A fact is an event, an occurrence, or something that exists in reality. *Webster's Third New International Dictionary* 813 (1976). It is what took place, an act, an incident, a reality as distinguished from supposition or opinion. 35 C.J.S. *Fact* 489 (1960). The "facts" required by CR 56(e) to defeat a summary judgment motion are evidentiary in nature. Ultimate facts or conclusions of fact are insufficient. *See Hatch v. Bush,* 215 Cal. App. 2d 692, 30 Cal. Rptr. 397

(1963). Likewise, conclusory statements of fact will not suffice. *American Linen Supply Co. v. Nursing Home Bldg. Corp.*, 15 Wn. App. 757, 767, 551 P.2d 1038 (1976).

Here, defendant's affidavit sets forth facts leading to plaintiff's termination. The memoranda attached to the affidavits set forth specific events, occurrences, things that were claimed to exist in reality. They stated that plaintiff did this or did not do that. On the other hand, plaintiff's affidavit in opposition presented only his conclusions and opinions as to the significance of the facts set forth in defendant's affidavit, *e.g.*, that was "petty," this was a "pretext," that was "an exaggeration," or a fact set forth was "much ado about nothing." It is apparent that these phrases do not describe an event, an occurrence, or that which took place.

Equally deficient are plaintiff's statements in his affidavit that he was not uncooperative, and that his job performance was not substandard. These are conclusions. As such, they do not counter defendant's statements of noncooperation based upon specific incidents. It would be different if plaintiff had claimed the incidents did not occur; for example, had he said that he had, in fact, completed all employee evaluation forms when defendant said he did not, an issue of fact would have existed. To describe the incident instead as "much ado about nothing" may express his sincere belief and conclusions as to the occurrences at issue, but does not set forth "facts." An analogy is found in *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980), an age discrimination case in which the employee testified in conclusory form as to his competence. The court said: "[the employee's] perception of himself . . . is not relevant. It is the perception of the decision maker which is relevant."

The lack of any factual basis for plaintiff's claim of age discrimination here is conclusively demonstrated by plaintiff's own deposition testimony:

Q. . . . You have alleged in this lawsuit that you were discharged because of advancing age and I would ask you, Mr. Grimwood: What is the basis for that claim?

A. Well, because *I don't feel I was given sufficiently good reason for my termination so I feel it has to be fundamentally another reason and that's all I can come up with.*

. . . .

Q. But as far as any specific facts which would support an age discrimination claim, it is your belief that because you feel that the reasons for your termination are not good, in your opinion, that it has to be another reason an that reason must be age; is that what you're saying?

A. That's what I'm saying.

Clerk's Papers, at 94–95.

An almost factually identical case is *Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369 (5th Cir. 1980). There, plaintiff stated in his deposition that age must have been the reason for his termination "'because I could see no other reason I could have been'" terminated. *Simmons,* at 371. The court held: "[plaintiff's] statement is conclusory and unsupported by any specific evidence." *Simmons,* at 371. The employer's summary judgment was affirmed. So it is here.

## II

### AGE DISCRIMINATION CLAIM

Plaintiff's age discrimination claim is based upon RCW 49.60.180: "It is an unfair practice for any employer . . . (2) [t]o discharge . . . any person from employment because of age . . ."

The statute does not provide any criteria for establishing an age discrimination case. Thus, in *Roberts v. ARCO,* 88 Wn.2d 887, 892, 568 P.2d 764 (1977), we looked to federal cases construing the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (1976). While these federal cases are a source of guidance, we bear in mind that they are not binding and that we are free to

adopt those theories and rationale which best further the purposes and mandates of our state statute.[1]

The federal courts have attempted to establish the elements of an employee's prima facie case, to allocate the resulting procedural burdens of production, and to allocate the ultimate burden of persuasion. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), the Supreme Court sets forth elements by which a prima facie case may be established under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1981) and allocated the resulting procedural burdens. Because of the similarity in purposes and substantive provisions in both the civil rights act and the ADEA, the federal courts have employed the *McDonnell Douglas* test and procedures in age discrimination cases. *See* Annot., *Proving That Discharge Was Because of Age, for Purposes of Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.),* 58 A.L.R. Fed. 94 (1982).

In *Roberts v. ARCO, supra,* and *Brady v. Daily World,* 105 Wn.2d 770, 776, 718 P.2d 785 (1986), we touched upon the nature of the elements of a prima facie age discrimination case and the allocation of the resulting, shifting burdens. *Roberts* and *Brady* set forth four elements sufficient to make out a prima facie age discrimination case: (1) that the employee was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a younger person. *Roberts,* at 892; *Brady,* at 777; *see also McDonnell Douglas,* at 804. We note that these four elements are not absolutes.

As explained by the court in *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979):

> *McDonnell Douglas,* in short, helps an alleged victim of discrimination identify the reasons he must show did not in fact lead to his discharge or rejection, and assists

---

[1]For a comparison of the state and federal acts see *Age Discrimination in Employment: A Comparison of the Federal and Washington State Statutory Requirements and Recent Developments,* 16 Gonz. L. Rev. 637 (1981).

him in making out his case with circumstantial evidence. It does not relieve him, however, of the burden of persuading the trier of fact that his rejection was a "discriminatory decision," *id.* at 805, 93 S.Ct. 1817. Although the *McDonnell Douglas* prima facie case has a foundation in experience and logic, *Furnco [Constr. Corp v. Waters,]* 438 U.S. [567] at 577, [57 L. Ed. 2d 957,] 98 S.Ct. 2943 [(1978)]; [*International Bhd. of] Teamsters [v. United States,]* 431 U.S. [324] at 358, n.44, [52 L. Ed. 2d 396,] 97 S.Ct. 1843 [(1977)], its proof is not equivalent to a factual finding of discrimination, *Furnco,* 438 U.S. at 579, 98 S.Ct. 2943. Indeed, the inference of discrimination created by the prima facie case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext, *see id.* at 578, 98 S.Ct. 2943. Thus prima facie proof may entitle the plaintiff to a directed verdict if the defendant fails to meet his burden of production, but not otherwise.

*Loeb,* at 1014–15. Further, the court said:

While we conclude that *McDonnell Douglas* provides an appropriate and workable formula for the trial of age discrimination cases, it should not be used inflexibly as a vehicle for organizing evidence or presenting a case to a jury. Above all, it should not be viewed as providing a format into which all cases of discrimination must somehow fit. The Supreme Court has made it abundantly clear that *McDonnell Douglas* was intended to be neither "rigid, mechanized, or ritualistic," *Furnco,* 438 U.S. at 577, 98 S.Ct. 2943, nor the exclusive method for proving a claim of discrimination, *Teamsters,* 431 U.S. at 358, 97 S.Ct. 1843.

*Loeb,* at 1016–17.

In *Loeb,* the court also points out that the element of replacement by a younger person or a person outside the protected age group is not absolute; rather, the proof required is that the employer "sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills." *Loeb,* at 1013.

■ We agree with the *Loeb* court's analysis and its conclusion that the burden of *persuasion* remains at all times upon the plaintiff. Once a plaintiff has made out a prima

facie case, the employer must articulate a legitimate, non-discriminatory reason for termination. The employer's burden at this stage is not one of persuasion, but rather a burden of production. To go forward, the employer need only articulate reasons sufficient to meet the prima facie case. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 360 n.46, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977) (discussing nature of evidence necessitated by the employer's burden of production.) Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of persuasion and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose. *See Loeb,* at 1011–12.

Here, we assume that plaintiff made out a prima facie case. The employer's affidavit articulated legitimate, non-discriminatory reasons for plaintiff's termination consistent in manner and content with its internal personnel manual. Defendant thus met its burden of production. Plaintiff did not, however, meet his burden to create a genuine issue of fact that defendant's articulated reasons were a pretext for a discriminatory purpose.

Initially, the letters from various users of food services expressing satisfaction, which were part of plaintiff's affidavit in opposition to summary judgment, created a prima facie case as to plaintiff's satisfactory performance of his job. None of these letters, however, came from anyone charged with the direct supervision and evaluation of his overall performance. The letters were insufficient to overcome the reasons for plaintiff's termination articulated by defendant, particularly where the reasons were supported by statements from plaintiff's direct supervisors as to his substandard performance and lack of cooperation in his job.

Moreover, defendant's articulated reasons for terminating plaintiff were substantial. Over a long period of time the employer had called job deficiencies to plaintiff's attention in writing, suggested ways he could improve his performance, and expressed a willingness to assist him in

correcting the problems. The legitimacy of defendant's reasons for discharging plaintiff are bolstered by the fact that the complaints were stated in writing long before plaintiff's termination, by the fact that some complaints about his performance came from those under plaintiff's supervision rather than only from the person with authority to discharge, and by the fact that defendant relied, in part, on objective events, such as plaintiff's repeated failure to complete personnel evaluation forms for employees under his supervision, as reasons for discharging him. Defendant had also warned plaintiff 6 months before his termination that continued substandard performance in the designated areas would be cause for dismissal.

Facing these long–standing, documented reasons, contained in defendant's affidavit in support of summary judgment, plaintiff had the burden to show a sufficient factual basis to support a genuine issue of material fact that his discharge was motivated by a discriminatory purpose rather than the reasons articulated by the defendant employer. He did not do so. He did not challenge the factual contents of any of the several memoranda. Instead, plaintiff countered only with his opinions that the incidents at issue were "nothing but pretexts", "much ado about nothing", "equally petty" and an exaggeration of "a minor misunderstanding." Plaintiff's conclusory opinions do not amount to material facts admissible in evidence showing there is a genuine issue for trial as to his age discrimination claim. We conclude that summary judgment for the defendant was proper.

## III
### Breach of Contract Claim

Plaintiff bases his breach of contract upon the principles of *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). Before reviewing *Thompson's* claimed application here, we begin by setting forth the evidence before the trial court. First, plaintiff testified in his deposition as follows:

Q. Maybe you could tell us, Mr. Grimwood, in your own words, the substance of your Complaint. You have alleged there was a breach of contract. Can you tell me what the contract is that you are alleging there is a breach of?

A. Well, I felt there was an implied contract that my job will continue at U.P.S. providing that my services were satisfactory.

Q. What is the basis for that feeling that you had of implied contract? *What do you base that upon?*

A. *Just my expectations.*

Q. That is a gut feeling you had, sort to speak?

A. Yes.

Q. Did anyone at U.P.S. tell you you had a contract with them to provide services to the University?

A. No.

Q. Did anyone ever provide you with a contract form?

A. No.

Clerk's Papers, at 93. It is clear there was no express contract for continued employment. Next, plaintiff quoted portions of UPS's Staff Personnel Policies & Procedures Manual in his affidavit:

Disciplinary action should be corrective rather than punitive and should be appropriate to the performance issue in question. *Permanent employees whose performance falls below standard should be clearly informed of their deficiencies and given opportunities to take corrective action.* Usually a series of progressive disciplinary actions results in dismissal; however, for a major act of misconduct, an employee may be dismissed immediately.

Clerk's Papers, at 118–19. Commenting on this policy, plaintiff stated in his affidavit that the "implication of that policy was that permanent employees whose job performance was satisfactory had job security." Clerk's Papers, at 119. We note that plaintiff's conclusory statement as to the effect of the policy is of no consequence. It is a conclusion of law and, thus, is not the proper subject of an affidavit on a summary judgment motion. *See Orion Corp. v. State,* 103 Wn.2d 441, 462, 693 P.2d 1369 (1985).

Nevertheless, the portion of the Manual quoted by plaintiff does satisfy one holding of *Thompson,* to wit: "we

hold that employers may be obligated to act in accordance with policies as announced in handbooks issued to their employees." *Thompson,* at 229. We conclude here, however, that the employer complied with the policies of its Manual. Memoranda to plaintiff clearly informed him of his deficiencies; he was given opportunities to correct those deficiencies. Six months prior to his discharge, plaintiff was notified that he had "been warned repeatedly about . . . substandard performance in personnel management and about the unacceptability of noncooperative behavior." Clerk's Papers, at 105. He was warned that continued substandard performance would be cause for dismissal. Clerk's Papers, at 105. Plaintiff received all that was promised by UPS in its Manual. Summary judgment was proper.

## IV
### Wrongful Discharge Claim

Plaintiff claims that because his discharge violated RCW 49.60.180(2), it supports a claim of wrongful discharge in violation of a clear mandate of public policy. We note that *Thompson* did adopt a tort liability theory as a "narrow public policy exception". *Thompson,* at 232. However, it is inapplicable here because we have held that plaintiff has failed to prove his discrimination claim. Thus, plaintiff's tort claim necessarily fails. We expressly do not decide whether a cause of action exists for wrongful discharge in violation of public policy when the declaration of public policy is declared in a statute already providing a remedy.

Affirmed.

Dore, Andersen, Callow, Goodloe, and Durham, JJ., and Baker, Cunningham, and Hamilton, JJ. Pro Tem., concur.