[No. 13350-4-II. Division Two. January 23, 1991.]

RANDY JONES, *Appellant*, v. KITSAP COUNTY SANITARY
LANDFILL, INC., ET AL, *Respondents*.

*Mary C. Kinerk, Richard L. Peterson,* and *Crawford,
McGilliard, Peterson & Yelish,* for appellant.

*Christopher J. Bell,* for respondents.

WORSWICK, C.J.—Randy Jones, a black man, was fired by
his employer, Juan de Fuca Corrugated, Ltd., a salvaging
concern, from his job as a salvager at a Kitsap County
dump. We now reverse summary judgment dismissing his
claim for racially–motivated discharge against Juan de Fuca

and Kitsap County Sanitary Landfill, Inc., operator of the dump.[1]

Jones started working as a salvager for Juan de Fuca in 1984. His employment was terminable at will. In July 1985, Jones suffered partial amputation of a finger in an accident involving a front–loader, which he had been learning to operate. Jones was not returned to his front–loader job when he went back to work, and he states that the position was filled by a white person. Jones was assigned lighter duty directing traffic at the public entrance to the landfill, in keeping with his doctor's orders. Occasionally, Jones was asked to pick up debris at the entrance, and he says that this aggravated his injury. After several weeks on this lighter duty, Jones was reassigned to salvager duties. He claims that the lighter duty job went to a white worker whose physical restrictions were less than his own.

Jones' affidavit alleges other acts of discrimination including an incident in which three black workers were reported for tardiness, although chronically tardy white workers were not. He states that whites were generally treated with more respect and courtesy than blacks. Jones states that no reasons were given for his dismissal in early September 1986, 14 months after his accident.

In his summary judgment affidavit, Richard Arnold, on–site superintendent for both companies, stated that Jones was fired for absenteeism and theft of landfill property. Arnold had seen Jones putting a garden hoe into his car.

Although Washington's law against discrimination, RCW 49.60, prohibits racial discrimination in employment (RCW 49.60.180(2)) and creates private causes of action (RCW 49.60.030(2)), it does not define the elements of a cause of action for a racially motivated discharge. We believe, and

---

[1]Jones essentially alleges collaboration in his discharge by the two companies.

We find without merit Jones's contention that triable fact issues exist concerning his claims of handicap discrimination, wrongful discharge in violation of public policy, negligent and intentional infliction of emotional distress, outrage, and defamation. We affirm dismissal of these claims.

we hold, that the elements of a racial discharge claim are the same as those in an age discrimination case.[2]

 To establish a prima facie case, a plaintiff must show that he or she (1) was a member of a protected class; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by someone not in the protected class. *See Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 362, 753 P.2d 517 (1988); *Hatfield v. Columbia Fed. Sav. Bank,* 57 Wn. App. 876, 790 P.2d 1258 (1990). Confounding the traditional notion of a prima facie case, however, a fifth element lurks over the horizon. It is appended to the plaintiff's burden, but only after the employer–defendant produces evidence tending to show a nonracial reason for the discharge. The plaintiff must then produce evidence tending to show that the employer's stated reason was only a pretext. *See Hatfield,* 57 Wn. App. at 880.

Confusion has arisen concerning the role of this fifth element in a summary judgment proceeding because of the following language in *Grimwood,* a summary judgment case:

> Once a plaintiff has made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for termination. The employer's burden at this stage is not one of persuasion, but rather a burden of production. To go forward, the employer need only articulate reasons sufficient to meet the prima facie case. . . . Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his *ultimate burden of persuasion* and show

---

[2]Extrapolation from age discrimination cases is appropriate. Their source is the prima facie case for race discrimination in hiring as set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) (case brought under Title VII of the Civil Rights Act of 1964). The Supreme Court stated that complainant may show a prima facie case of racial discrimination by showing (1) that he belongs to a racial minority; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas,* 411 U.S. at 802. These elements were later adapted to cases of discriminatory *firing* based on *age. Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013–14 (1st Cir. 1979) (cautioning that the *McDonnell Douglas* format was not intended to be "rigid, mechanized, or ritualistic."). *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 753 P.2d 517 (1988) (citing *Loeb*).

that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose.

(Italics ours.) *Grimwood*, 110 Wn.2d at 363–64. This language seems to have led the trial court here to conclude that, on *summary judgment*, Jones had to *persuade* the court that the employer's reason for the discharge was a pretext. Jones had no such burden.

*Grimwood* must be read together with *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979), on which *Grimwood* relies. We are satisfied that *Grimwood* adopts the *Loeb* holding, and that the confusion has arisen because of infelicitous word choice. *Accord, deLisle v. FMC Corp.*, 57 Wn. App. 79, 786 P.2d 839, *review denied*, 114 Wn.2d 1026 (1990).

*Loeb* involved an appeal following a jury trial, not a summary judgment. Although the *Loeb* court stated that the burden of persuasion (referring to a jury trial) remains at all times with the plaintiff, it did so while criticizing cases that had purported to place a burden of persuasion on employer–defendants. *Loeb*, 600 F.2d at 1011. Among other things, *Loeb* held that the burden to articulate a nondiscriminatory purpose (again, in a jury trial) is a burden of production, not a burden of persuasion. *Loeb*, 600 F.2d at 1011. *Loeb* went on to hold that, once the employer had articulated such a reason, the employee "must show that the reason so articulated or stated is a mere pretext or 'cover–up' for what was in truth a discriminatory purpose." *Loeb*, 600 F.2d at 1011–12.

Nothing in *Loeb* places a burden of persuasion on a plaintiff on summary judgment. At that stage, the plaintiff's burden remains, as always, one of production. The requirement that he show that the employer's reason was a pretext simply adds a fifth element to the prima facie case of discrimination.[3] However, because of the unique twist by

---

[3]In *Loeb*, the court noted that in an age discrimination case, a jury would be instructed that, to prevail, the plaintiff must prove each element of the prima facie case and also that defendant's stated reason for the discharge was a pretext. *Loeb*, 600 F.2d at 1018.

which the fifth element requirement changes the traditional notions of a prima facie case, that element becomes part of plaintiff's *burden of production* on summary judgment, but only after the defendant produces evidence of a nonracial reason for the discharge.

Jones made a showing sufficient to defeat summary judgment on each of the five elements. He is a member of a protected class, was discharged, and was apparently doing satisfactory work, a logical inference from his initial front–loader training and continued assignments when he returned from medical leave. Jones states that he was replaced both on the front–loader job and in the salvaging position by white workers. More significantly, Jones' affidavit creates a genuine issue of material fact concerning whether the reasons for the discharge were pretexts.

As to absenteeism, Jones states that he asked for employment records to determine his absences and was told that some of the records were missing. He also states that the records produced do not confirm the absences. Arnold's own deposition testimony reveals that some records were missing. As to the theft reason, Jones states that a policy at the landfill permitted employees to remove items of little value from the site. Items of some value could be removed, he says, if employees obtained permission from a supervisor. Arnold outlined virtually the same policy in his deposition. Jones' removal of the hoe is at least as consistent with the property removal policy as it is with Arnold's theft theory.

Having met his burden of *production* on all five elements, Jones is entitled to present his case to a jury.

Reversed. Remanded for trial.

ALEXANDER and MORGAN, JJ., concur.