[No. 14467-1-II.   Division Two.   August 3, 1993.]

LINDA PARSONS, *Appellant,* v. ST. JOSEPH'S HOSPITAL AND HEALTH CARE CENTER, *Respondent.*

*Stanley M. Talcott,* for appellant.

*Judith B. Stouder* and *Stoel Rives Boley Jones & Gray,* for respondent.

MORGAN, J. — Linda Parsons appeals a summary judgment dismissing her complaint for discriminatory termination of employment. We affirm.

Parsons is a white female who has a congenital condition known as dystrophic dwarfism. Because of that condition, she is short of stature and has shortened extremities.

After graduating from high school, Parsons attended Clover Park Vocational Technical Institute's medical secretary pro-

gram. As part of that program, she spent about a month as a student intern at St. Joseph's Hospital. Her performance as an intern was satisfactory, and she ultimately earned her certificate as a health unit coordinator.

In July 1988, St. Joseph's created a new position for a part-time medical unit secretary on the sixth floor. The new person was to work the night shift, performing tasks that the day and evening secretaries had been neglecting. The tasks included preparing admission packets, stuffing drawers with forms, and keeping a logbook up to date.

The nurse-manager of the sixth floor medical unit was Linda Hoyt. On July 21, 1988, Hoyt hired Parsons for the new position. A collective bargaining agreement provided that Parsons would be subject to a 4-month probationary period, during which she could be terminated without cause. It also provided that she would be evaluated in writing at the end of 90 days.

Parsons started orientation and training on August 1, 1988. She began her night-shift duties near the end of August.

Hoyt and Parsons met together in August, October and early November. According to Hoyt, shortcomings in Parsons's work were discussed. According to Parsons, her work was discussed but not significantly criticized.

Hoyt failed to provide a written evaluation after 90 days. However, she also failed to provide a written evaluation to any other employee under her supervision. It is undisputed that her standard practice did not comply with the applicable collective bargaining agreement.

On November 22, 1988, before Parsons's probation had ended, Hoyt fired her. The hospital did not hire anyone else to work the night shift; rather, it hired an additional day-shift secretary, changed the schedule of all the day-shift secretaries to 4 10-hour days per week, and had the day-shift secretaries perform the duties previously assigned to Parsons. The day-shift secretaries were not handicapped.

In May 1989, Parsons sued St. Joseph's, alleging handicap discrimination. St. Joseph's answered that Parsons had been

terminated for unsatisfactory job performance. It denied that dystrophic dwarfism played a part in the decision.

About a year later, St. Joseph's moved for summary judgment. It supported the motion with an affidavit from Hoyt stating that the decision to terminate Parsons was based solely on poor job performance and had nothing to do with Parsons's dystrophic dwarfism. The trial court granted the motion.

At the outset, we observe that this is not a "reasonable accommodation" case. In that type of case, the central idea is that an employer cannot fire an employee for poor job performance if the poor job performance was due to sensory, mental or physical handicap and reasonable accommodation would have rectified the problem. *See Jane Doe v. Boeing Co.,* 121 Wn.2d 8, 18, 846 P.2d 531 (1993) (employer's duty to accommodate employee's condition limited to those steps reasonably necessary to enable employee to perform job); *Clarke v. Shoreline Sch. Dist. 412,* 106 Wn.2d 102, 120, 720 P.2d 793 (1986); *Dean v. Municipality of Metro Seattle,* 104 Wn.2d 627, 632, 708 P.2d 393 (1985); *Holland v. Boeing Co.,* 90 Wn.2d 384, 389, 583 P.2d 621 (1978). Here, Parsons does not claim that her job performance was detrimentally affected by her dystrophic dwarfism, or that St. Joseph's should have treated her differently from other employees.

As Parsons correctly points out, the central issue in this case is whether St. Joseph's acted with a discriminatory motive or intent. *DeLisle v. FMC Corp.,* 57 Wn. App. 79, 83, 786 P.2d 839, *review denied,* 114 Wn.2d 1026 (1990). In analyzing this issue, we engage in the same inquiry as the trial court, and we take the evidence and all reasonable inferences therefrom in the light most favorable to Parsons. *DeLisle,* 57 Wn. App. at 82. We also analogize to cases involving age and race discrimination, for those cases are like this one in that the employer's motive or intent forms the central issue. *DeLisle,* 57 Wn. App. at 82; *see Jones v. Kitsap Cy. Sanitary Landfill, Inc.,* 60 Wn. App. 369, 371 n.2, 803 P.2d 841 (1991).

When a plaintiff claims that an employer fired him or her because of handicap, two elements of the claim are whether the plaintiff had a handicapping condition and whether that condition was a reason for the discharge.[1] *Jane Doe v. Boeing Co.,* 121 Wn.2d at 15; *Michelsen v. Boeing Co.,* 63 Wn. App. 917, 921, 826 P.2d 214 (1991). Plaintiff bears the burden of persuasion on these elements at trial, *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 363, 753 P.2d 517 (1988), but plaintiff need not satisfy that burden in order to avoid dismissal by summary judgment. *Jones,* 60 Wn. App. at 372; *deLisle,* 57 Wn. App. at 83. In summary judgment proceedings, the defendant must initially show that plaintiff lacks evidence from which a rational trier of fact could (but not necessarily would) find one or both elements by a preponderance of evidence; and if the defendant makes such a showing, but not otherwise, the plaintiff must demonstrate that he or she can produce evidence from which a rational trier could (but not necessarily would) find the challenged element or elements. *Young v. Key Pharmaceuticals, Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989); *see also In re C.B.,* 61 Wn. App. 280, 285, 810 P.2d 518 (1991); *deLisle,* 57 Wn. App. at 83. In short, the plaintiff must show that he or she can meet the burden of production at trial, once a defendant has shown the absence of a material issue of fact. *Jones,* 60 Wn. App. at 372 (at summary judgment stage, plaintiff's burden is one of production).

In a case in which the employer's motive or intent is the central issue, a common way to satisfy the burden of production is to apply by analogy the 3-part scheme developed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) (race discrimination) and *Texas Dep't of Comm'ty Affairs v. Burdine,* 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) (sex discrimination). First, the plaintiff must come forward with evidence sufficient to support findings that he or she was discharged from employment; that he or she was

---

[1] Because WAC 162-22-040 is poorly worded, these elements are intertwined in a problematic and circular way. *Jane Doe v. Boeing Co.,* 121 Wn.2d at 15-16.

handicapped; that he or she was doing satisfactory work; and that he or she was replaced by a person who was not handicapped. Second, the defendant must come forward with evidence sufficient to support a finding that plaintiff was discharged for a nondiscriminatory reason. Third, plaintiff must come forward with evidence that the reason urged by defendant is a pretext for discrimination. *Grimwood,* 110 Wn.2d at 362-64 (age discrimination); *Hatfield v. Columbia Fed. Sav. Bank,* 68 Wn. App. 817, 822-24, 846 P.2d 1380 (1993) (same); *Carle v. McChord Credit Union,* 65 Wn. App. 93, 98-102, 827 P.2d 1070 (1992) (same). Only when all three parts are met is there an issue of fact for the jury. *Carle,* 65 Wn. App. at 102.

■ Although this 3-part scheme provides a common way of satisfying the burden of production, it is not "a format into which all cases of discrimination must somehow fit." *Stork v. International Bazaar, Inc.,* 54 Wn. App. 274, 279 n.1, 774 P.2d 22 (1989). A plaintiff who chooses not to rely on *McDonnell Douglas* can still meet his or her burden of production in any way that yields evidence from which a rational trier of fact could find unlawful discrimination by a preponderance of the evidence. *Grimwood,* 110 Wn.2d at 363; *deLisle,* 57 Wn. App. at 83; *Stork,* 54 Wn. App. at 278-79.

Parsons does not dispute that St. Joseph's met its initial summary judgment burden of showing she lacked evidence sufficient to support an element of her cause of action. Rather, she contends that she has responded adequately in two different ways.

First, Parsons says she satisfied the 3-part *McDonnell Douglas* scheme. In evaluating whether this is true, we assume Parsons has satisfied the first part of the burden of production, and we hold that St. Joseph's has satisfied the second part as well. Thus, we focus on whether Parsons has produced evidence from which a rational trier could find that St. Joseph's reason for termination is a pretext for discrimination. *See Hatfield,* 68 Wn. App. at 824.

Parsons says that the following facts support an inference of a pretext for discrimination: (1) She was hired last of all the students who interned with her, except for one who was

not hired at all. (2) She had little contact with physicians or visitors during the night shift. (3) She was never considered for a position other than the night shift, or for a position in which she would have contact with physicians and visitors. (4) Her duties as night shift secretary differed from those of the day and evening shift secretaries. (5) She was the only secretary "terminated because admit packs occasionally ran out, drawers were not always stuffed with forms, and inappropriate admits were not always logged." (6) Hoyt failed to evaluate her in writing after 90 days. (7) She was not deficient in her job performance, and Hoyt never informed her she was.

These facts do not support an inference that St. Joseph's is asserting a pretext. The first four show only that a night position was created to relieve the day and evening secretaries of certain duties, that it had the usual attributes of a night position, and that it was the position that Parsons was hired to fill. They have no tendency to show Parsons was passed over for a day or evening position because of her dystrophic dwarfism, or that she was better qualified for a day or evening position than someone who was actually hired. The fifth reflects only that Parsons was the one responsible for stocking admit packs, stuffing forms in drawers, and logging inappropriate admits. Because those duties were mostly hers, the fact she alone was fired for not performing them is insignificant on the issue of pretext. The sixth might be significant if Hoyt had given a written evaluation to any other employee. As the trial judge noted, however, it is undisputed that Hoyt failed to evaluate any employee in writing. Thus, there is no reasonable inference that Hoyt's failure to provide a written evaluation to Parsons was in some way related to Parsons's dystrophic dwarfism. The seventh shows only a dispute concerning job performance, and such a dispute without more is not an adequate reason for submitting a case of this sort to the jury. We conclude that Parsons has failed to satisfy the 3-part *McDonnell Douglas* scheme.

■ Second, Parsons says or implies that even if she has not satisfied the 3-part *McDonnell Douglas* scheme, she has still produced evidence sufficient to support an inference concerning the ultimate fact, discrimination. Again, however, the evidence shows no more than that Parsons had a night job, that she says she performed it well, and that her employer says she performed it badly. Such evidence does not give rise to a reasonable inference of discrimination.

Parsons relies on *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983), but that case is not persuasive here. Aikens was a black person who alleged racial discrimination. He produced the following evidence:

> Aikens showed that white persons were consistently promoted and detailed over him and all other black persons between 1966 and 1974. Aikens has been rated as " 'an outstanding supervisor whose management abilities were far above average.' " App. 8. There was no derogatory or negative information in his personnel folder. He had more supervisory seniority and training and development courses than all but one of the white persons who were promoted above him. He has a master's degree and has completed three years of residence towards a Ph.D. Aikens had substantially more education than the white employees who were advanced ahead of him; of the 12, only 2 had any education beyond high school and none had a college degree. He introduced testimony that the person responsible for the promotion decisions at issue had made numerous derogatory comments about blacks in general and Aikens in particular.

460 U.S. at 713 n.2.

The United States Supreme Court found this evidence sufficient to support an inference of discrimination. 460 U.S. at 713 n.2. However, that finding does not aid Parsons. Aikens's evidence clearly supported inferences (1) that he had been treated differently from other employees and (2) that the reason was race. In contrast, Parsons's evidence does not support an inference that she was treated differently, or an inference that any difference in treatment was due to her dwarfism.

If the trial court had allowed this case to proceed to trial, Parsons would have been unable to produce evidence suffi-

cient to satisfy the burden of production. Therefore, the trial court did not err when it granted summary judgment.

Affirmed.[2]

SEINFELD, A.C.J., and PETRICH, J. Pro Tem., concur.

---

[2]After this opinion was prepared, but before it was filed, the United States Supreme Court decided *St. Mary's Honor Ctr. v. Hicks,* ___ U.S. ___, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993). Whether that case will become the law of Washington remains to be seen. If it were the law of Washington, however, it would support affirmance here.