35 F.3d 570
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Samuel A. BRINKLEY, Plaintiff-Appellant,
v.
HONEYWELL, INC., a Delaware Corporation, Defendant-Appellee.
 No. 93-35402.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 4, 1994.
Decided Aug. 30, 1994.
 
 Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Samuel Brinkley ("Brinkley") appeals from the order granting summary judgment in favor of Honeywell, Inc. ("Honeywell"). Brinkley contends that the employee handbook issued by Honeywell in 1980 ("1980 Handbook") modified his at-will employment status, and that Honeywell failed to follow the procedural safeguards contained in the 1980 Handbook when he was terminated. Brinkley also contends that he was terminated on the basis of his sex. We affirm the order granting summary judgment. We conclude that Brinkley failed to demonstrate that the 1980 Handbook provided him with legally enforceable rights regarding termination of his at-will employment. We further conclude that Brinkley did not satisfy the four-part test necessary to establish a prima facie case of wrongful termination based on a claim of invidious discrimination.
 
 I.
 
 3
 Brinkley contends that the district court erred when it granted Honeywell's motion for summary judgment regarding his claim for breach of an employment contract. He argues that there is a genuine issue of material fact in dispute regarding whether Honeywell fulfilled each of the conditions set forth in the 1980 Handbook that must proceed the termination of an at-will employee. We review de novo a district court's grant of summary judgment. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). Because this is a diversity case, we must apply the substantive law of the state of Washington. Erickson v. Desert Palace, Inc., 942 F.2d 694, 695 (9th Cir.1991) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)), cert. denied, 112 S.Ct. 1476 (1992).
 
 
 4
 Brinkley first became an employee of Honeywell in 1976. In 1977, he left Honeywell to start his own business. On January 1, 1980, Brinkley was rehired by Honeywell as a security systems sales representative. When he was rehired, Brinkley filled out and signed an employment application. The application states that "[m]y employment is in accordance with any applicable written agreement and applicable personnel policies published to employees and, subject to such agreement or policies, may be terminated by me or by Honeywell at any time."
 
 
 5
 In September of 1980, Brinkley was given a copy of the 1980 Handbook. The 1980 Handbook states:
 
 
 6
 Honeywell will make every effort in terms of counseling employees whose work is unsatisfactory including reassignment to a more suitable position, whenever possible. If such action fails, the employee will be advised of the need for termination in ample time to permit adjustment to the situation.
 
 
 7
 On June 1, 1990, Honeywell provided Brinkley with a performance evaluation in which he was informed of his strengths and weaknesses. On August 7, 1990, Brinkley signed an agreement with Honeywell, which required him to book a specified amount of sales by September 7, 1990. The agreement further indicated that Brinkley would be terminated as of September 7, 1990, unless he met the requisite sales goal. Brinkley's employment was terminated on September 7, 1990, because he failed to meet the quota.
 
 
 8
 Brinkley contends that the 1980 Handbook modified his at-will employment contract by requiring Honeywell "to make every effort in terms of counseling" before terminating his employment. He argues that there is a genuine issue of material fact regarding whether Honeywell followed the procedural safeguards set forth in the 1980 Handbook regarding counseling. We disagree.
 
 
 9
 Honeywell asserts that Stewart v. Chevron Chemical Co., 762 P.2d 1143 (Wash.1988), supports its contention that the 1980 Handbook did not create a legally binding obligation. We agree. In that matter, Stewart, an at-will employee, predicated his wrongful discharge claim on a company policy manual, which stated that "[i]n determining the sequence of layoffs due to lack of work, consideration should be given to performance, experience and length of service." Id. Because of a change in operations, Chevron laid off several supervisors based on performance evaluations over the preceding three years. Id. The company did not consider length of service in terminating Stewart's employment. Id. Stewart alleged that Chevron breached his employment contract by not considering all three factors regarding layoffs contained in the company policy manual. Id.
 
 
 10
 In Stewart, the Supreme Court of Washington recognized that an employer might be bound by policy statements in employment manuals. Id. at 1145. The court held that "only those statements in employment manuals that constitute promises of specific treatment in specific situations are binding. 'Policy statements as written may not amount to promises of specific treatment and merely be general statements of company policy, and thus, not binding.' " Id. Thus, the court concluded that the employee handbook did not constitute a specific promise because it merely stated that the employer "should" consider certain factors. Id. at 1145-46. Likewise, the statement contained in Honeywell's 1980 Handbook lacks the specificity necessary to create a legal obligation because of the ambiguity and discretion inherent in the words "will make every effort in terms of counseling".
 
 
 11
 Brinkley's reliance on Swanson v. Liquid Air Corp., 826 P.2d 664 (Wash.1992), in support of his contention that the statements in the 1980 Handbook modified his at-will employment status, is misplaced. In Swanson, the plaintiff, an at-will employee, filed an action for wrongful discharge. Id. at 665. The company issued a Memorandum of Working Conditions, the relevant portion stated that prior to discharging an employee, "at least one warning shall be given." Id. at 666. The court held that "this promise is specific enough to constitute an enforceable contract term." Id. at 670. The court explained, however, that if an employee handbook does not contain a specific promise of a procedural safeguard, it does not create an enforceable right. See Id. at 669 (if reasonable minds can differ regarding whether the language of an employee handbook contains an offer or a promise of specific treatment in specific circumstances, the challenged passage does not modify the terms of employment.)
 
 
 12
 The 1980 Handbook states that "Honeywell will make every effort in terms of counseling employees whose work is unsatisfactory." The words "make every effort" do not provide a detailed or specific procedure to be followed prior to terminating an employee. Because reasonable minds can differ as to whether Honeywell made a promise in the 1980 Handbook that it would follow a specific course of conduct prior to terminating its employees, the reference to counseling merely reflects company policy. It is not a binding condition. The district court did not err in granting the motion for a summary judgment on this claim. The 1980 Handbook did not change Brinkley's status as an at-will employee.
 
 II.
 
 13
 Brinkley contends that there are genuine issues of material fact in dispute as to whether he was discharged on the basis of sex. Brinkley asserts that "Honeywell treated him unequally compared to his female co-workers and that he was discharged as a direct result of Rebecca Smith's intentional effort to set him up for failure as the only male salesperson in her branch."
 
 
 14
 In order to determine the elements of a sex discrimination discharge claim, the district court relied upon the decision of the Supreme Court of Washington in Grimwood v. University of Puget Sound, 753 P.2d 517 (Wash.1988), involving an age discrimination claim, and the decision of the Court of Appeal in Jones v. Kitsap County Sanitary Landfill, Inc., 803 P.2d 841 (Wash.Ct.App.1991), involving a race discrimination claim. Both of these matters were filed under Revised Code of Washington Annotated section 49.60.180(2), the same statute relied upon by Brinkley in prosecuting his sex discrimination claim. Section 49.60.180(2) provides that it is an unfair labor practice for any employer to "discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin." Wash.Rev.Code Ann. Sec. 49.60.180(2) (West 1990).
 
 
 15
 In Grimwood, the plaintiff, a 61-year-old male, was terminated from his position as Director of Food Services from the University of Puget Sound. Grimwood, 753 P.2d at 517. Grimwood filed an action against the University alleging in part that it engaged in age discrimination in violation of Revised Code of Washington Annotated section 49.60.180(2). Id. In resolving his claim, the Supreme Court of Washington held that in order to state a prima facie claim for age discrimination, a plaintiff must meet his burden of producing evidence that "(1) the employee was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a younger worker." Id. at 520. The court further explained that:
 
 
 16
 Once a plaintiff has made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for termination. The employer's burden at this stage is not one of persuasion, but rather a burden of production. To go forward, the employer need only articulate reasons sufficient to meet the prima facie case. Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of persuasion and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose.
 
 
 17
 Id. at 521 (citation omitted).
 
 
 18
 In Jones, the plaintiff, a black male, was terminated from his job as a salvager at a dump operated by Kitsap County. Jones, 803 P.2d at 842. Jones filed an action alleging that his discharge was based in part on racially motivated grounds. Id. The court explained that the relevant statute, Revised Code of Washington Annotated section 49.60.180(2), did not define the elements that a plaintiff must satisfy to allege an action based upon a racially motivated discharge. Id. The Court of Appeals resolved this issue by adopting the test announced in Grimwood. Id. The court held that "[t]o establish a prima facie case, a plaintiff must show that [he] (1) was a member of a protected class; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by someone not in the protected class." Id. at 843.
 
 
 19
 "When reviewing issues of state law, we are 'bound to follow the decisions of a state's highest court in interpreting that state's law.' If no ruling exists from the highest court of the state, we must follow intermediate appellate decisions unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.' " Ogden Martin Systems v. San Bernardino County, 932 F.2d 1284, 1289 (9th Cir.1991) (internal citations omitted). Neither the Supreme Court of Washington nor the Court of Appeals of Washington has ruled on a gender discrimination claim regarding termination of employment. Because Brinkley's claim is based upon an alleged violation of Revised Code of Washington Annotated section 49.60.180(2), we believe the Supreme Court of Washington would apply the four-part test announced in Grimwood for a claim of sex discrimination. This approach would be consistent with the Court of Appeals of Washington's interpretation of Grimwood. Jones, 803 P.2d at 842.
 
 
 20
 Applying this analysis, Brinkley's gender discrimination claim fails because he failed to prove that he was replaced by an individual who is not a member of the same protected class. Grimwood, 753 P.2d at 520; Jones, 803 P.2d at 843. Brinkley was replaced by a Tim Kelly, a male. Kelly, after undergoing a sales training program, was fired after his first day on the job. Kelly was replaced by a woman. Neither party presented any evidence regarding the basis for Honeywell's termination of Kelly's employment.
 
 
 21
 Brinkley asserts, however, that his successor "never actually amounted to a 'replacement' since he was fired after only one day on the job following his training. The new man was then replaced with a woman." Brinkley argues that Honeywell's decision to hire a male replacement who was terminated shortly after being hired was merely "pretextual."
 
 
 22
 In Jones, the court explained that a plaintiff in an employment discrimination discharge case may be required to satisfy a fifth element and produce evidence which demonstrates that the employer's stated reason for its actions were merely a pretext. Jones, 803 P.2d at 843. The court noted that this element "is appended to the plaintiff's burden, but only after the employer-defendant produces evidence tending to show a non-racial reason for the discharge." Id. (emphasis added). In Jones, the court held that the employer's motion for summary judgment was precluded because there were genuine issues of material fact regarding the basis for Jones' termination. Id. at 844. Thus, the issue of pretext becomes relevant only after a plaintiff produces evidence which satisfies the four-part test to establish a prima facie claim of gender based discrimination.
 
 
 23
 Because Brinkley was replaced by a male, he failed to make out a prima facie case of gender discrimination. We reject his claim without reaching the question of whether the record raises a genuine issue of material fact concerning whether Honeywell's reasons for hiring a male replacement were pretextual.
 
 
 24
 AFFIRMED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 25
 I respectfully dissent. Both on the handbook, and on the discrimination claim, I think Brinkley was entitled to a trial.
 
 
 26
 The majority misreads Swanson v. Liquid Air Corp., 826 P.2d 664 (Wash.1992). The case establishes that under Washington law, it is often a question of fact whether the employee handbook is sufficiently clear, and sufficiently clearly communicated, to establish a contractual limitation on employment at will. Id. at 669. The question may be determined as a matter of law only when reasonable minds cannot differ on the issue of whether a contract was formed, as was the case in Stewart v. Chevron Chemical Co., 762 P.2d 1143 (Wash.1988). Swanson, 826 P.2d at 669.
 
 
 27
 In this case, reasonable minds could differ on whether the employee handbook established a contractual right, so Brinkley was entitled to trial of the issue. The provision in Stewart that allowed the court to determine it did not modify the at-will status of employment because it was too vague for any reasonable person to conclude otherwise: "consideration should be given to performance, experience and length of service." Stewart, 826 P.2d at 1144. The employer promised nothing because the provision did not require the employer to do anything. The handbook provisions in Gaglidari v. Denny's Restaurants, Inc., 815 P.2d 1362, 1366 (Wash.1991), modified the employee's at-will status as a matter of law because they provided for a counseling and review program and review procedures for employees whose performance was unsatisfactory.
 
 
 28
 In this case, Honeywell was required to "make every effort" to counsel Mr. Brinkley, including possible reassignment to a more suitable position. This statement shares neither the specificity of the handbook in Gaglidari, nor the vacuousness of the provision in Stewart, but it is closer to Gaglidari. Honeywell promised to take steps before terminating Mr. Brinkley which he alleges were not taken. Many contracts provide for "best efforts," and are treated as binding promises. Brinkley was at least entitled to trial, if he was not entitled to judgment as a matter of law, on the question of whether he had a contractual right to no discharge except in compliance with the book. As for whether the company did comply, on that too, Brinkley established a genuine issue of material fact. Reasonable jurors could conclude that the company did not make a genuine effort, but that instead, his supervisor purposely cut his territory and raised his quota in order to make it impossible for him to perform according to her new standards, applied only to him and not to others.
 
 
 29
 Brinkley also established a genuine issue of fact on the issue of sex discrimination. The district court ruled that he had failed, as a matter of law, to establish a prima facie case, because the company replaced him with another man. But he established that the man had been fired after only one day of work. The company put in no evidence to show why the replacement was fired so quickly. With no explanation offered by the employer, a reasonable trier of fact could conclude that the man supposedly hired to replace Brinkley was just another victim of sex discrimination, not a genuine hire, and that his short tenure was merely a pretext to avoid Brinkley's claim. The majority misapplies Jones v. Kitsap Sanitary Landfill, 803 P.2d 841 (Wash.App.1991). True, if Brinkley could not establish that he was replaced by a female, he would not have a prima facie case. But he has established a genuine issue of fact regarding that element. His proof would entitle a trier of fact to conclude that Brinkley was replaced by a female, and that the male whom the company claimed replaced him did not in fact do so, because his hire was a sham.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3