91 F.3d 153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Annette MacDONALD, Plaintiff-Appellant,
v.
SWEDISH HEALTH SERVICES, Defendant-Appellee.
 No. 95-35272.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 8, 1996.
Decided July 1, 1996.
 
 1
 Before: HALL, TROTT, Circuit Judges, and RAFEEDIE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 The plaintiff-appellant, Annette MacDonald, brought suit against her former employer, Swedish Health Services ("SHS"), claiming that SHS discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), and the Washington Law Against Discrimination, Wash.Rev.Code § 49.60. SHS terminated MacDonald during a overall reorganization that resulted in layoffs of 150 employees, and in which MacDonald's position was eliminated.
 
 
 4
 The district court granted SHS's motion for summary judgment, holding that "no rational trier of fact could, when considering all of the evidence presented, find that [SHS] terminated MacDonald's employment for impermissible discriminatory reasons." MacDonald subsequently filed a motion to reconsider, which the district court denied. MacDonald filed a timely appeal on both of these motions. We affirm.
 
 
 5
 * MacDonald claims that SHS discriminated against her on the basis of age in violation of ADEA, 29 U.S.C. §§ 621-634, which applies to individuals who are at least 40 years of age. 29 U.S.C. § 631(a) (Supp.1995). The burden-shifting approach developed for Title VII discrimination claims applies to disparate treatment claims under the ADEA as well. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir.1990). The plaintiff must first establish a prima facie case by introducing evidence that "give[s] rise to an inference of unlawful discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the plaintiff meets this burden, she creates a rebuttable presumption that the employer engaged in intentional discrimination. The burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its employment decision. Id. Once the the employer satisfies this burden of production, then the burden shifts back to the plaintiff to produce "specific, substantial evidence" that the proffered reason is merely a pretext. Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983). To survive a motion for summary judgment, the plaintiff must demonstrate a genuine issue of material fact as to pretext. Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir.1994). Despite the burden-shifting involved in this analysis, the ultimate burden remains with the plaintiff to prove that her employer discriminated against her because of her age. Rose, 902 F.2d at 1420-21.
 
 
 6
 In this case, the district court found that, regardless of whether she satisfied the prima facie case for age discrimination, MacDonald did not present sufficient evidence of pretext to raise a genuine issue of material fact. We agree. For that reason, we now affirm the district court's grant of SHS's motion for summary judgment.
 
 
 7
 SHS asserts that MacDonald's termination resulted due to an overall reduction in work force, in which her job was eliminated. In addition, SHS did not hire her for any of the newly created positions because she did not apply for or express an interest in those jobs, or in the case of the Coordinated Care Manager position, because it was limited to then-current SHS employees. MacDonald's proffered evidence of pretext consists of a number of factors, which will be considered separately.
 
 
 8
 First, the linchpin of MacDonald's case is a comment made by her supervisor, Catharine MacAuley, that the organization sought to bring in "new blood" or "new ideas." In Title VII cases, "[c]omments suggesting that the employer may have considered impermissible factors are clearly relevant." Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990). "Stray" remarks, on the other hand, are not sufficient to establish discrimination. Id. (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) (plurality opinion)).
 
 
 9
 A desire to revitalize the organization with "new blood" is not by itself synonymous with age discrimination. Taken literally, these words suggest that the hospital wanted to consider outside applicants, both young and old. But as the district court pointed out, the "term 'new blood' frequently connotes the replacement of older employees with younger ones." Given the ambiguous meaning of these words, we interpret them in light of the surrounding circumstances; however, stray, ambiguous, general remarks are not sufficient evidence to defeat summary judgment. Merrick, 892 F.2d at 1438-39 (holding that an employer's comment that he chose a younger replacement because he was "a bright, intelligent, knowledgeable young man" was nothing more than a stray remark); Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir.1993) (holding that a comment to the plaintiff by his direct supervisor that "we don't necessarily like grey hair" was at best weak circumstantial evidence of discriminatory animus); cf. Buckley v. Hospital Corp. of America, 758 F.2d 1525, 1527-28 (11th Cir.1985) (plaintiff presented sufficient evidence of discrimination based on an administrator's statement that the hospital needed "new blood," joined with his stated desire to attract younger doctors and nurses, and his repeated comments on the plaintiff's advanced age); Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir.1991) (finding age discrimination when executives who actively participated in the challenged employment decisions made several age-related comments such as, "older employees have problems adapting to changes and to new policies").
 
 
 10
 Macauley's remark was a single isolated comment. Nothing in the record suggests that there was any pattern of age-related comments made by the decisionmakers involved in the layoffs. Furthermore, the statement was not offered as an explanation for MacDonald's termination, but was offered as a general explanation of why SHS decided to consider outside applicants for the newly created positions. As were the statements in Merrick and Nesbitt, it was an ambiguous remark, that was, at best, weak circumstantial evidence of age discrimination. Consequently, the "new blood" comment does not support a finding that SHS's proffered reasons for MacDonald's termination are a pretext for age discrimination.
 
 
 11
 Second, MacDonald argues that statistical evidence supports a finding that the reorganization of the nursing department disproportionately affected older employees. The district court found that the statistics did not show a pattern of age discrimination because they were based on a small portion of the overall reorganization, in which SHS laid off 150 employees. Although sometimes the statistics for a single department may be relevant to show discrimination against individuals in that department, see MacDissi v. Valmont Industries, 856 F.2d 1054, 1058-59 (8th Cir.1988), the statistics MacDonald presented do not provide specific, sustantial evidence that SHS's reduction in work force was a pretext for age discrimination. Businesses are all too often forced to reduce their work force as a result of economic pressures. Here, SHS drastically reduced the size of the nursing department as part of an overall downsizing, and MacDonald has not produced sufficient evidence for us to find that the department reorganization was a pretext for age discrimination.
 
 
 12
 Third, MacDonald claims that SHS did not eliminate her position but instead absorbed her duties into newly created positions. As a result, she claims that SHS's argument that she was terminated because her job was eliminated was a pretext. The new positions encompassed MacDonald's job, so SHS did continue to need her skills. However, the new positions each consolidated the duties of three departments, so they included additional responsibilities and required broader skills. (ER I:CR 22:Exh 9 at 54-55). The restructuring reduced six manager positions down to two. Undeniably, SHS continued to require someone to perform at least some of the duties of the original six managers; but it is equally undeniable that four management positions were eliminated. The fact that SHS chose to terminate the six original managers and hire two outside persons for these new positions is not relevant evidence of pretext.
 
 
 13
 Finally, MacDonald asserts a variety of claims that the hiring decisions for the new positions provide evidence of pretext. For example, she argues that SHS chose outside applicants with equal or lesser qualifications than she had, thus proving that they dismissed her for some improper reason. Although SHS hired outside persons who did not wholly meet the stated criteria for the new positions, it was well within its discretion to do so. "The ADEA ... is not a general regulation of the workplace but a law which prohibits discrimination. The statute does not constrain employers from exercising significant other prerogatives and discretions in the course of the hiring, promoting, and discharging of their employees." McKennon v. Nashville Banner Publishing Co., 115 S.Ct. 879, 886 (1995).
 
 
 14
 In addition, "[w]hen an employer reduces its work force for economic reasons, it incurs no duty to transfer the employee to another position within the company." Rose, 902 F.2d at 1422. SHS did not assume any responsibility for finding other positions for any of the terminated employees. Furthermore, in some instances an employee's failure to apply for an available position, after termination during a work force reduction, may preclude a claim under the ADEA. See Wanger v. G.A. Gray Co., 872 F.2d 142, 147 (6th Cir.1989). But in situations where the employer "creat[ed] an atmosphere in which employees understand that their applying for certain positions is fruitless," then even nonapplicants may challenge the decision. Id. at 145; see also International Bhd. of Teamsters v. United States, 431 U.S. 324, 367-68 (1977) (noting that a per se prohibition of relief for nonapplicants would allow "[v]ictims of gross and pervasive discrimination [to] be denied relief"). The record in this case, however, does not demonstrate the kind of "gross and pervasive discrimination" that would deter members of the protected class from applying for employment. Furthermore, the fact that MacDonald felt she was discouraged from applying because of the "new blood" comment does not establish that it would have been futile for her to apply. In short, SHS had no duty to provide MacDonald another position within the company, which is strengthened by the fact that she did not even apply for the two new positions open to outside applicants. Therefore, SHS's hiring decisions provide no evidence that its termination of MacDonald as a result of the downsizing was pretextual.
 
 
 15
 In conclusion, after considering the evidence MacDonald presented we find that she has not met her burden of proving that SHS's proffered reason for her termination--an overall reorganization that included eliminating or consolidating her position--was a pretext for discrimination on the basis of her age.
 
 II
 
 16
 Washington state courts interpret disparate treatment claims under the Washington Law Against Discrimination, Wash.Rev.Code § 49.60, using the same standards set forth for the ADEA. See Grimwood v. University of Puget Sound, 753 P.2d 517, 520-21 (Wash.1988) (following the McDonnell Douglas burden shifting analysis, although noting that the Washington courts may also "adopt different theories and rationales which best further the purposes ... of the state statute"). Therefore, we also affirm the district court's grant of summary judgment for SHS based upon the Washington Law Against Discrimination.
 
 III
 
 17
 For the foregoing reason, we affirm the district court's orders granting summary judgment for Swedish Health Services and denying MacDonald's motion for reconsideration.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3