IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CYNTHIA HEBERT AND JAMES D. HEBERT, husband and wife, | ) ) ) | No. 37215-4-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SPRING CREEK EASEMENT OWNERS ASSOCIATION, (RMA) BOARD OF TRUSTEES, | ) ) ) ) ) | |
| Respondent. | ) | |

FEARING, J. — Cynthia and James Hebert appeal summary judgment rulings granted a homeowners association to which they belonged. The association, Spring Creek Easement Owners Association, removed boulders and a gate placed by the Heberts in a road easement. In turn, the association charged the Heberts for the costs of the removal. When the Heberts failed to pay the assessment and regular assessments, Spring Creek sued to foreclose on the assessments lien, and the Heberts sued for damage to their gate and boulders. We affirm the superior court's dismissal of the Heberts' suit and the superior court's foreclosure of the assessments lien.

FACTS

In 2003, Sapphire Skies, LLC created Spring Creek, an eight-parcel development in pristine Kittitas County. Two roads, Thunder Road and Ridge Crest Road, serve the

development.  At least one road traverses each of the eight plots.  The developer recorded easements for the two roads.

In addition to recording road easements, Sapphire Skies recorded covenants, conditions, and restrictions (covenants) to create a homeowners association to maintain the two roads and to impose duties on the lot owners within the association.  In 2018, the association adopted the name Spring Creek Easement Owners Association.  We refer to the association simply as Spring Creek.  A three-member board of directors, consisting of a president, a secretary, and a treasurer, manages Spring Creek.  All parcel owners are members of the homeowners association and hold nonexclusive easements for access, ingress, and access along the two roads.

Cynthia and James Hebert own Parcel 7 of Spring Creek, where Ridge Crest Road eventually ends.  The appeal concerns boulders placed and a gate installed by the Heberts along and across Ridge Crest Road.  James Hebert is the former president of Spring Creek, having resigned on February 23, 2017.

Many provisions of the recorded covenants pertain to the dispute on appeal.  Paragraph 1.2 of the covenants broadly states Spring Creek's powers and duties:

> The duties and powers of the Association are those set forth in this Declaration, the Articles and Bylaws adopted by the Association, together with its general and implied powers of a nonprofit corporation, generally to do any and all things that a corporation organized under the laws of the State of Washington may lawfully do which are necessary or proper in operating for the peace, health, comfort, safety and general welfare of its Members, subject only to the limitations upon the exercise of such powers

> as are expressly set forth in this Declaration, the Articles and Bylaws. Without limiting the generality of the foregoing, the primary functions of the Association shall be enforcement of the covenants, the maintenance, operation and repair and insurance of the entry statement, private road easements over and across the Property for the purpose of ingress and egress to the Lots.

Clerk's Papers (CP) at 315. The last sentence omits an "and" somewhere. Paragraph 1.10 limits the owners' ability to build or improve on their lot without approval by the Architectural Control Committee (ACC), which, per paragraph 1.9, is a three-member committee designated by the board. The paragraph reads:

> Subject to the exemption of Declarant hereunder, no structure, improvement, or alteration of any kind which will be visible from other Dwellings, private roadways serving the Property or any public right of way shall be commenced, erected, painted or maintained upon the Property, until the same has been approved in writing by the ACC.

CP at 64.

Paragraph 3.2 of the Spring Creek covenants requires Spring Creek to maintain the easements in the HOA:

> The Association shall maintain and repair the Easements, or shall contract for such maintenance and repair to assure maintenance of the Easements in good condition.

CP at 304. Paragraph 4.1 governs the homeowners association owners' obligation to pay assessments to Spring Creek. The paragraph declares in part:

> each Owner of any Lot by acceptance of a deed or contract therefore, whether or not it shall be so expressed in such deed or contract, is deemed to covenant and agree to pay to the Association the following Assessments,

3

which shall be established and collected as provided herein and in the
bylaws of the Association:
—Regular Assessments;
—Extraordinary Assessments; and
—Special Assessments

CP at 318.

Paragraph 5.1 of the covenants expresses the declarant's authority to install gates

and forbids the owners from infringing on other owners' right of access to the easements.

The paragraph declares, in relevant part:

Declarant expressly reserves for the benefit of the Owners
reciprocal, nonexclusive easements for access, ingress and egress, over and
under all of the Easements. Declarant expressly reserves the right to install
entry gates and move the location of the road and therefore the easement.
. . . In addition, in the Easements, the Owners of the Lots may install
utilities, including but not limited to: sanitary sewer, water, electric, gas,
television receiving, or telephone lines or connections, provided, however
such use of the Easements shall be reasonably necessary for use and
enjoyment of a Lot in the Property and such use shall not infringe on any
Lot Owner's use of the Easement for access, ingress and egress.

CP at 306.

Paragraph 10.1 grants the homeowners association board or an owner the right to

enforce the covenants. The paragraph also governs an award of attorney fees in any

lawsuit to enforce the covenants:

The Board, any Owner, and any governmental or quasi-
governmental agency or municipality having jurisdiction over the Property
shall have the right to enforce, by any proceedings at law or in equity, all
restrictions, conditions, covenants, reservations, liens, and charges now or
hereafter imposed by this Declaration, and in such action shall be entitled to
recover costs and reasonable attorneys' fees as are ordered by the Court.

4

> Failure by any such person or entity to enforce any such provision shall in no event be deemed a waiver of the right to do so thereafter.

CP at 320.

We move to the facts that give rise to the appeal. In 2004, Cynthia and James Hebert erected a chain fence across Ridge Crest Road as the road traverses their land. The Heberts had already installed a separate gate in front of their home along their driveway outside Ridge Crest Road.

In January 2005, the Spring Creek board of directors convened a meeting. The meeting minutes indicate that Spring Creek discussed potentially erecting a permanent gate across Ridge Creek Road and on the Heberts' parcel:

> Following all the discussion above, the topic of gates were [sic] raised again. Jim and Cynthia Hebert had placed a chain across the easement on the property line between Lot 7 and Lot 8. There was a discussion on safety concerns with a chain across the road and Cynthia commented she would replace it with a gate. There was a lengthy discussion on the legality of placing a gate on the easement and putting a gate up without written approval from Plum Creek and Sapphire Skies who both have legal easements.
>
> An [sic] majority of the homeowners agreed (7-1) to install a gate at the entrance to the Spring Creek Property where it comes up from Ridge Crest Road and Pat Deneen's property. *To do this, Cynthia Hebert was going to get written approval from Plum Creek and Sapphire Skies prior to erecting the gate. If written approval cannot be obtained, it was agreed to authorize Cynthia Hebert to install a temporary gate at the location of the chain. This temporary gate would be reviewed in the summer and a definite timeline established for its removal.*

CP at 94 (emphasis added).

Cynthia and James Hebert insist that the homeowners association board, during the January 2005 meeting, approved a permanent gate, even though the minutes refer to the approval as temporary and conditional. Current Spring Creek President Marion Deardorff averred in a declaration that the Heberts did not obtain written permission from Sapphire Skies or Plum Creek to build a permanent gate.

Sometime between January and June 2005, Cynthia and James Hebert constructed a permanent gate on their property across Ridge Crest Road. The Heberts erected the gate further inside their parcel, rather than on the property line between Lots 7 and 8, contrary to their representation during the board meeting.

On May 26, 2005, the Spring Creek board of directors conducted a meeting, during which they discussed the Heberts' permanent gate. Cynthia Hebert explained that she wanted a permanent gate due to safety concerns arising from individuals entering her property with firearms. She added that, because of these concerns and on the advice of their attorney, the couple constructed the permanent gate on Ridge Crest Road. The meeting minutes further state:

> The cost of the gate was stated by Cynthia as being $7000 and *would not be removed even if the association voted for its removal*. The condition for removal of the gate would be upon installation of another gate elsewhere.
> . . . .
> Perry LaCelle took issue with Cynthia taking action outside of the Easement Association—1) She didn't get correct approvals from Plum Creek, and 2) didn't get signatures per request from Sapphire Skies. Cynthia replied that she did get permissions requested and sent them to the

6

easement association. Perry commented that the permissions were from a third party (Plum Creeks [sic] Legal Council [sic]) with area's [sic] blacked out and the request from Sapphire Skies was never complied with.

. . . .

John Craig proposed revisiting the gate at the end of the summer and give time for Chad Allen to talk with Pat Deneen about putting up a more permanent gate coming up the mountain. . . .

. . . .

A second motion was offered to allow Chad Allen to discuss with Pat Deneen installation of a gate. Chad would be authorized to discuss and bring any proposal to the Easement Association for formal approval. The motion passed 8 to 0.

CP at 330 (emphasis added).

Cynthia and James Hebert also placed a series of boulders on Lot 7 within the road easement. The Heberts claim that they decided to line the boulders along the road after the board determined that it would be too expensive to install guard rails. According to the Heberts, the couple laid the boulders in the spring of 2006, but Marian Deardorff declared that the Heberts set the boulders in the winter of 2004.

Twelve years passed without any action by Spring Creek with regard to Cynthia and James Hebert's gate. In the meantime, Spring Creek's independent contractor, Benito Chavez, encountered difficulties when snowplowing Ridge Crest Road because of the gate and boulders. The Heberts frequently changed the gate's lock combination. Chavez declared that the gate posts and boulders impeded his maintenance of the road to its width of sixteen feet wide, and, as winter progressed, two vehicles could not pass one another.

In April 2017, Marion Deardorff replaced James Hebert as president of Spring Creek. Marion Deardorff described Spring Creek's operations as informal before the conversion.

On July 18, 2017, the Spring Creek board met and discussed removing the Heberts' permanent gate and boulders. The meeting minutes state:

> The subject of removal of the rocks and gates was discussed. We reviewed the history of the gate installation and membership meeting where it was discussed. In addition, several large boulders are located on the easement placed there by Jim & Cynthia Hebert. The gate and boulders block or impede ingress with some of the owners and snow plowing service expressing concern over their placement. After discussion, the board declared them to be in violation and will contact the associations [sic] legal representative to request Jim & Cynthia Hebert remove both the gate and the boulders.

CP at 332.

On July 26, 2017, Spring Creek's attorney wrote to Cynthia and James Hebert for the purpose of affording them notice and an opportunity to be heard before Spring Creek took action to remove the gate and boulders. The Heberts objected to the removal due to the board's alleged approval of their installation, safety concerns, and the passage of over a decade without Spring Creek's demand for removal.

In October 2017, Spring Creek's contractor, Benito Chavez removed the Heberts' boulders. Chavez billed Spring Creek $2,030.40 for removing the boulders. In turn, Spring Creek invoiced the Heberts for the cost of removing the boulders. In November 2017, Chavez removed the Heberts' gate blocking Ridge Crest Road. Chavez charged

Spring Creek $1,987.20 for this work, and Spring Creek demanded reimbursement of the sum from the Heberts.

From 2017, Spring Creek prepared annual budgets. Spring Creek then levied assessments on each lot owner, including the Heberts. The Heberts claim that the wrongful removal of their gate and boulders resulted in property damage. Because their property damage exceeded their homeowners association assessments and because they believe that a portion of the charges related to Spring Creek's snow plowing activities outside the road easements, they refused to pay their assessments.

In March 2018, Spring Creek presented Cynthia and James Hebert with a final demand letter, requesting the Heberts pay the outstanding balance of their assessments, expenses incurred when removing the Heberts' gate and boulders, and attorney fees and collection costs, for a total of $15,433.10. The letter conveyed Spring Creek's intent to proceed with foreclosure.

PROCEDURE

Cynthia and James Hebert sued Spring Creek and its "Board of Trustees" for negligence. The Heberts alleged that Benito Chavez negligently removed their boulders, which damaged their fences and disrupted the integrity of Ridge Crest Road. In addition to seeking damages for negligence, the Heberts sought an order declaring that: (1) Spring Creek may not restrict their right to install an entry gate, (2) Spring Creek may not modify the covenants to prohibit entry gates without the unanimous consent of all

property owners, and (3) the Heberts have the right to protect the integrity of their property by placing barricades or boulders at a location agreed on by them and Spring Creek.

Spring Creek filed a separate complaint against Cynthia and James Hebert. The complaint sought foreclosure on the lien imposed on the Heberts' Lot 7 for unpaid homeowners association assessments. Spring Creek alleged that the Heberts owed $32,773.22 in assessments, interest, attorney fees, and costs. In Spring Creek's suit, Cynthia and James Hebert counterclaimed for improper maintenance of the easements and damages resulting from the removal of the Heberts' gate and boulders. The Heberts asserted that their damages exceeded the amount of the assessments imposed by Spring Creek. The superior court consolidated the Heberts' negligence suit and Spring Creek's foreclosure action.

Spring Creek moved for summary judgment dismissal of the Heberts' claims and for summary judgment in its foreclosure action. In support of the motion, Spring Creek filed a declaration from Marion Deardorff. The Heberts did not object to Deardorff's declaration.

In opposition to Spring Creek's summary judgment motion, Cynthia Hebert filed a declaration. Hebert averred, in part:

> 2. Hebert's [sic] *were given permission to install a permanent gate* by the Spring Creek Road Maintenance Association with permission from the other easement holders, Plum Creek and Sapphire Skies.

10

> *I have exhibits 1, 2, and 3 (Minutes from the 2004 giving permission the [sic] build the gate* and showing where the guardrails should be located, Letter giving permission from Plum Creek, Sapphire Skies gave their permission verbally (followed by a fax showing the location), since their easement was only for the purpose having access to sell any remaining lots. In any case, Sapphire Skies is no longer in existence.)
>
> 3. May 2005, the gate was installed, picture of the original gate and minutes from the May Spring Creek membership meeting. And minutes from the Fall 2005 meeting.
>
> 4. While the association gave permission for a permanent gate in the winter of 2004, they determined that they wanted to see how it was working during the summer and would revisit it at the fall meeting if there were any issues. The only gate issue that the association decided to discuss at that meeting was one about a mile away on Pat Deneen's property.
>
> . . . .
>
> 12. Attached for the court's review are true and accurate copies of the following documents:
>
>> . . . .
>>
>> B. Minutes of the January 31, 2005 [meeting] giving permission for the permanent gate.
>>
>> C. Letter from Plum Creek giving permission for the gate.

CP at 83-85 (emphasis added). Hebert did not attach any Exhibit C to her declaration.

The superior court granted Spring Creek summary judgment on the Heberts' claims and on Spring Creek's claim. When entering a summary judgment order, the trial court entered a judgment and decree of foreclosure that awarded reasonable attorney fees and costs to Spring Creek in the amount of $69,345.40.

## LAW AND ANALYSIS

On appeal, Cynthia and James Hebert contend that issues of material fact exist as to whether the Spring Creek covenants precluded their erection of the gate along Ridge

11

Crest Road and placement of the boulders on the side of the road. The Heberts argue that, because the covenants do not preclude their placement of these objects, principles of easement interference control and issues of fact exist as to whether the boulders and gate unreasonably interfered with the road easement. The Heberts also contend that an issue of fact exists as to whether Spring Creek granted it permission to install a permanent gate.

For the first time on appeal, Cynthia and James Hebert contend that: (1) hearsay infects the declaration of Spring Creek President Marion Deardorff, (2) Spring Creek did not establish itself as the successor in interest to the covenants' declarant, (3) Spring Creek lacks standing to enforce the covenants on behalf of the owners of the other seven lots in Spring Creek, (4) the statute of limitations expired as to Spring Creek's claim that the Heberts breached the covenants, and (5) the Heberts acquired a prescriptive easement at the location of their gate and boulders. We decline to address these five contentions. RAP 9.12 governs issues raised initially on an appeal of a summary judgment motion, and states, in relevant part:

> On review of an order granting or denying a motion for summary judgment *the appellate court will consider only evidence and issues called to the attention of the trial court*.

(Emphasis added.)

## Covenants

Cynthia and James Hebert first contend that the covenants do not prevent them or other lot owners from installing gates. Spring Creek responds that the covenants grant it

exclusive authority to erect gates. After reading together paragraphs 1.2, 1.10, 3.2, and 5.1, we agree with Spring Creek.

Restrictive covenants are contracts. The primary objective in contract interpretation is to ascertain the intent of the parties at the time they executed the contract. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014). This court gives words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. at 713. This court also views the contract as a whole by interpreting particular language in the context of other contract provisions. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. at 713.

Paragraph 1.2 recognizes the primary function of Spring Creek as the maintenance and operation of the road easements throughout the development in order to promote ingress and egress for the lot owners. Paragraph 1.10 limits the owners' ability to build or improve on their lot without approval by the Architectural Control Committee. Paragraph 3.2 imposes on Spring Creek the obligation to maintain the easements. Paragraph 5.1 of the covenants recognizes the homeowners association's authority to install gates and forbids owners from infringing on other owners' right of access to the easements. These paragraphs express an intent to grant the homeowners association plenary power over use of the roads and to preclude any owner from obstructing a road regardless of whether the association forms an architectural control committee.

13

Even if we were to agree with the Heberts that Spring Creek lacked exclusive authority to erect gates, we would conclude that Spring Creek has authority, under the covenants, to preclude homeowners from erecting gates and boulders that impede egress and ingress. As analyzed below, the undisputed facts established that the boulders and gate unreasonably interfered with use of the easement for Ridge Crest Road.

Permission

Cynthia and James Hebert next argue that, regardless of whether the covenants precluded them from erecting a gate and placing boulders on Ridge Crest Road, the homeowners association granted them permission to install a permanent gate. Spring Creek responds that, at most, the association granted permission to erect a temporary gate.

We scrutinize Cynthia Hebert's declaration to determine whether the declaration raises a genuine issue of material fact as to whether the homeowners association granted permission to install a permanent gate. We emphasize that, when averring that Spring Creek gave the Heberts permission for a permanent gate, Cynthia Hebert's declaration provides no details of when and by whom the association granted permission, other than referring the reader to minutes from a 2004 meeting. The declaration also refers the reader to Exhibit C, purportedly attached to the declaration, as a letter from Plum Creek giving permission for the gate.

14

Cynthia Hebert does not attach any minutes from a 2004 meeting to her declaration. The declaration also is missing any Exhibit C. The declaration attaches minutes from a January 2005 meeting. Those meeting minutes read:

> To do this, Cynthia Hebert was going to get written approval from Plum Creek and Sapphire Skies prior to erecting the gate. If written approval cannot be obtained, it was agreed to authorize Cynthia Hebert to install a temporary gate at the location of the chain. This temporary gate would be reviewed in the summer and a definite timeline established for it's [sic] removal.

CP at 94.

The attachments, on which Cynthia Hebert's bases her claim of permission for a permanent gate, defeat her conclusory statement of permanent permission. The sole attachment addressing permission states that permission was temporary unless she gains written approval from Plum Creek and Sapphire Skies. She provides no evidence of written permission.

Summary judgment is proper when "there is no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law." CR 56(c); *State ex rel. Banks v. Drummond*, 187 Wn.2d 157, 167, 385 P.3d 769 (2016). An affidavit does not raise a genuine issue for trial unless it sets forth facts evidentiary in nature—that is information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988), *abrogated on other grounds by Mikkelson v. Public Utility*

*District No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017); *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991). A fact is an event, an occurrence, or something that exists in reality. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d at 359.

A party opposing a motion for summary judgment may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Likewise, a party may not rely on having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d at 13. Instead, the nonmoving party must set forth specific facts that sufficiently rebut the moving parties' contentions and disclose that a genuine issue as to a material fact exists. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d at 13. Ultimate facts or conclusions of fact are insufficient; conclusory statements of fact will not suffice. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60 (1988). Two foreign courts have declined to accept facts declared in an affidavit when documents filed along with the affidavit contradict those stated facts. *Hassiem v. O&G Industries, Inc.*, 197 Conn. App. 631, 650, 232 A.3d 1139, 1152, *cert. denied*, 335 Conn. 928, 235 A.3d 525 (2020); *Lujan v. Navistar, Inc.*, 503 S.W.3d 424, 436 (Tex. App. 2016), *aff'd in part, rev'd in part*, 555 S.W.3d 79 (Tex. 2018).

Cynthia and James Hebert contend that Spring Creek's lack of an objection, between 2005 and 2017, to their gate and boulders support the conclusion that the homeowners association authorized them to install their gate and boulders. We disagree that the lack of action creates an issue of fact. The Heberts present no evidence of any statements or conduct, other than lack of action, on behalf of the association that impliedly approved the obstructions. During most of this time, James Hebert served as association president. Paragraph 10.2 of the covenants contains an anti-waiver clause, allowing Spring Creek to enforce any provision of the covenants even if it did not enforce the provision initially.

Cynthia and James Hebert also highlight that other homeowners placed boulders along the roads. Nevertheless, the Heberts present no evidence of any other boulders interfering in maintenance of the roads or access along the roads.

Easement Rules

Because we conclude that the language of the covenants precludes Cynthia and James Hebert from installing a gate across Ridge Crest Road and laying boulders on the side of the road, we need not analyze whether traditional easement rules require the Heberts to remove these obstacles. We would grant Spring Creek summary judgment on this issue also, however.

The person who benefits from an easement, known as the easement holder or dominant estate owner, has a property interest in the land subject to the easement, known

17

as the servient estate. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). A servient estate owner may use his property in any reasonable manner that does not interfere with the original purpose of the easement. *Littlefair v. Schulze*, 169 Wn. App. 659, 665, 278 P.3d 218 (2012). With regard to an erection of a gate across a road, this court held, in *Northwest Properties Brokers Network, Inc. v. Early Dawn Estates Homeowner's Association*, 173 Wn. App. 778, 793, 295 P.3d 314 (2013):

> Accordingly, when determining whether a gate or its ease of use unreasonably interferes with easement rights, we consider (1) the increased burden on the servient estate, (2) whether the restrictions on the gate are reasonably necessary for protection, and (3) the degree to which the gate interferes with the dominant owner's use.

The Heberts had legitimate safety concerns for erecting a permanent gate, but they already maintained a separate gate in front of their home outside of Ridge Crest Road. The addition of the second gate further down the road did not increase protection for their home.

Benito Chavez testified that the boulders and gate impeded his snowplowing of Ridge Crest Road. The gate posts and boulders rendered more difficult the maintenance of the road to its sixteen feet width and precluded two vehicles from passing one another in winter months. The gate's constant change in lock combination delayed his work and increased Spring Creek's costs.

18

Although Cynthia and James Hebert claim the gate and boulders did not burden Spring Creek and other homeowners, they provided no facts to contravene the testimony of Benito Chavez. A party opposing a motion for summary judgment may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 13 (1986).

Negligence

Cynthia and James Hebert asserted an action for negligence in their complaint. In their response to Spring Creek's summary judgement motion, they argued that Benito Chavez damaged their property at the direction of Spring Creek. On appeal, however, the Heberts waived any claim for negligence.

Assessments

Cynthia and James Hebert argue that the trial court erred by granting summary judgment to Spring Creek for the amount of the Heberts' unpaid assessments to the association. On appeal, the Heberts only challenge assessments imposed against them relating to Spring Creek's expenses incurred by removing the Heberts' gate and boulders. They argue that they are not obligated to pay these assessments because the removal was wrongful. Because we conclude that Spring Creek held the prerogative to impose the cost of removal on the Heberts, we affirm the grant of summary judgment in favor of Spring Creek.

The Washington homeowners association act provides that an association may impose and collect assessments, also known as dues, and charges for late payments of the assessments:

> Unless otherwise provided in the governing documents, an association may:
> . . . .
> (2) Adopt and amend budgets for revenues, expenditures, and reserves, and *impose and collect assessments for common expenses from owners*;
> . . . .
> (11) *Impose and collect charges for late payments of assessments and, after notice and an opportunity to be heard by the board of directors* or by the representative designated by the board of directors and in accordance with the procedures as provided in the bylaws or rules and regulations adopted by the board of directors, *levy reasonable fines in accordance with a previously established schedule* adopted by the board of directors and furnished to the owners for violation of the bylaws, rules, and regulations of the association.

RCW 64.38.020(2), (11) (emphasis added). Paragraph 4.1 of the covenants requires the owners to pay assessments to Spring Creek. The paragraph states, in pertinent part:

> each Owner of any Lot by acceptance of a deed or contract therefore, whether or not it shall be so expressed in such deed or contract, is deemed to covenant and agree to pay to the Association the following Assessments, which shall be established and collected as provided herein and in the bylaws of the Association:
> —Regular Assessments;
> —Extraordinary Assessments; and
> —Special Assessments

CP at 318.

Superior Court Attorney Fees

Cynthia and James Hebert challenge the superior court's grant of reasonable attorney fees and costs to Spring Creek. The Heberts highlight that the trial court provided no basis for its decision and entered no findings in support of the award. Nevertheless, the Heberts do not challenge the amount of fees awarded by the superior court. They only challenge on appeal the granting of the fees. As a matter of law, Spring Creek was entitled to the award under the Spring Creek covenants.

Attorney Fees on Appeal

Both parties request attorney fees on appeal. Spring Creek seeks attorney fees pursuant to RAP 18.1 and RCW 4.84.185, claiming that the Heberts' appeal is frivolous. They also cite RCW 64.38.050 for its request for fees.

A party requesting fees under RAP 18.1 must provide argument and citation to authority to advise the court of the appropriate grounds for an award of attorney fees as costs. *Robinson v. American Legion Department of Washington, Inc.*, 11 Wn. App. 2d 274, 298, 452 P.3d 1254 (2019), *review denied by Smith v. American Legion Department of Washington*, 195 Wn.2d 1026, 466 P.3d 770 (2020). We question whether Cynthia and James Hebert's appeal is frivolous, but we need not address the frivolity of the appeal. RCW 64.38.050 and the Spring Creek covenants afford recovery.

RCW 64.38.050, a portion of the homeowners association act, declares:

> Any violation of the provision of this chapter entitles an aggrieved party to any remedy provided by law or in equity. The court, in an appropriate case, may award reasonable attorneys' fees to the prevailing party.

Additionally, paragraph 10.1 of the covenants allows the board or a lot owner to receive an attorney fee award when they enforce the covenants.

> The Board, any Owner, and any governmental or quasi-governmental agency or municipality having jurisdiction over the Property shall have the right to enforce, by any proceedings at law or in equity, all restrictions, conditions, covenants, reservations, liens, and charges now or hereafter imposed by this Declaration, and in *such action shall be entitled to recover costs and reasonable attorneys' fees as are ordered by the Court*.

CP at 320 (emphasis added).

### CONCLUSION

We affirm the superior court's ruling on summary judgment. We grant Spring Creek reasonable attorney fees and costs incurred on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____    _____
Siddoway, A.C.J.                              Staab, J.

22