# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MILICENT KORMANYOS, an individual, and MANAGED SOLUTIONS, INC. ("MSI"), a Washington corporation, | DIVISION ONE |
| Appellants, | No. 81312-9-I |
| v. | UNPUBLISHED OPINION |
| SEAN M. COOK, an individual, and GROUP PURCHASING RESOURCES LLC ("GPR"), a Washington Business Entity, | |
| Respondents. | |

DWYER, J. — Milicent Kormanyos and Managed Solutions, Inc. appeal

from the trial court's order granting the defendants' motion for summary

judgment. Kormanyos and Managed Solutions assert that the trial court entered

the order in error by (1) improperly narrowing the scope of the type of evidence

that can be offered to raise a genuine issue of material fact as to the existence of

damages, (2) failing to view the evidence in the light most favorable to the

nonmoving party, and (3) improperly making a credibility determination. Because

Kormanyos and Managed Solutions do not establish an entitlement to relief, we

affirm.

I

Milicent Kormanyos and Sean Cook were involved in a romantic

relationship. Cook was the owner of a company known as Group Purchasing

Resources LLC.  In October 2015, Kormanyos and Cook founded Managed Solutions, Inc.  According to a declaration filed by Kormanyos, Cook subsequently informed Kormanyos that "he was seeing someone else." Sometime thereafter, Kormanyos declared, accounts related to a particular client of Managed Solutions, Life Care Services, "were removed from [Managed Solutions'] control to an unknown 3rd-party server."  As a result, Kormanyos asserted, she "was not allowed or able to access or question invoicing, billing, commissions, tax information, or any other information on financial matters relating to [Managed Solutions]."

On April 2, 2019, Kormanyos and Managed Solutions filed a complaint against Cook and Group Purchasing Resources in King County Superior Court.[1] According to the defendants' motion for summary judgment, the complaint alleged that "1) Cook appropriated critical assets of Plaintiff Managed Solutions, Inc. ('MSI'); 2) . . . Cook usurped [a] business opportunity of [a] Group Purchasing Organization ('GPO') with which MSI conducted business; 3) . . . Defendants were unjustly enriched by . . . their actions; . . . 4) Defendants converted . . . assets which belonged to MSI; and 5) . . . Defendants' actions warrant the imposition of a constructive trust upon any alleged ill-gotten gains."[2]

On December 20, 2019, Cook and Group Purchasing Resources filed a motion for summary judgment seeking dismissal of these claims.

---

[1] The record on appeal does not contain a copy of the complaint.  However, the defendants' motion for summary judgment states, "On April 2, 2019, . . . Plaintiff Kormanyos filed a lawsuit against Defendant Cook and [Group Purchasing Resources]."  Given the inadequacy of the record, we rely on this assertion.

[2] Because the record does not contain a copy of the complaint, we again rely on defendants' motion for summary judgment for a characterization of the claims that were alleged.

On March 6, 2020, the trial court heard the defendants' motion for summary judgment. During the hearing, plaintiffs' counsel asserted that a document entitled "2016 Vision" provided evidence that Kormanyos and Managed Solutions had suffered damages as a result of the defendants' alleged wrongdoing. Notations on this document provided, in relevant part:

> Managed Solutions, Inc.
> 2016 Vision
> $3,000,000 by end of 2016 in billable sales to company
> . . .
> How to obtain the $3,000,000.00
> . . .
> - GPO[3]
>   - [Life Care Services] (139 locations)
>     - Savings approximately
>       - $250.00 a month x 139 locations= $34,750.00 a month x 12 months- $417,000.00 year. – 3% to GPO= $404,490.00

Plaintiffs' counsel argued that this document demonstrated that the account associated with a particular company, Life Care Services, had a value of $404,490. The trial court questioned this argument, reasoning that the document itself did not provide evidence that Kormanyos and Managed Solutions had suffered damages:

> THE COURT: The document is not proof of anything other than they mapped out what some hopes were in 2016.
> [PLAINTIFFS' COUNSEL]: Well --
> THE COURT: You could try to argue at trial. I am not going to be your trial judge. You could try to argue at trial that that somehow represents damages --
> [PLAINTIFFS' COUNSEL]: All right.
> . . . .
> THE COURT: Well only because I am being generous . . . .

---

[3] According to Kormanyos's declaration, which was attached to the plaintiffs' response to the defendants' motion for summary judgment, "GPO means 'Group Purchasing Organization.' Th[is] is an internal reference for [a] client by the name of LCS – Life Care Services."

3

I mean the more I'm thinking about it, you identified a single client. This vision statement is nothing. It is a nothing burger.

[PLAINTIFFS' COUNSEL]: Well sir, it is -- it is something that creates an issue of fact --

THE COURT: No.

[PLAINTIFFS' COUNSEL]: -- because it was created by both parties at the time.

THE COURT: But that -- what creates an issue of fact as to damages is an account statement showing revenue taken from this client and then saying, ["]Whoops, now we don't have that revenue anymore because that client went with him. He has taken that revenue.["] We don't have anything. This 2016 document, you could have written down $2 trillion.

[PLAINTIFFS' COUNSEL]: I did no such thing, your honor. I mean --

THE COURT: I know, but your client could have, right? I mean this could have been a moment from the Michael Myers' movie where he says, ["]$1 million,["] and then they say, ["]You know that's actually not a lot of money anymore.["] He goes, ["]$1 billion.["]

[PLAINTIFFS' COUNSEL]: That's the first time I have ever seen a judge do that --

THE COURT: Thank you, but you see my point? You can make up whatever number you wanted in that.

[PLAINTIFFS' COUNSEL]: Well I understand that, sir, but --

THE COURT: So it is not proof of anything.

[PLAINTIFFS' COUNSEL]: Except that these people were in business together and to the extent that either of them had functioning neurons, they would have been doing -- would have been acting in concert together to try to map out the business plan that made sense to them that they thought was reasonably executable.

THE COURT: It is a business plan though, that's not damages. That's the whole problem. . . .

. . . .

THE COURT: . . . . This case shouldn't go to trial on this. There is nothing there. The vision statement is just air. You could have written down anything that you wanted to.

I need contracts, I need revenue, I need something that shows that they were actually going to make money off of this client until he stole it, and I don't have that, so I am going to grant summary judgment after all on all claims.

Following the hearing, the trial court entered a written order granting the

defendants' motion for summary judgment.

4

Kormanyos and Managed Solutions appeal.

II

Kormanyos and Managed Solutions contend that the trial court erred by granting the defendants' motion for summary judgment. Specifically, Kormanyos and Managed Solutions assert that the trial court (1) improperly narrowed the scope of the type of evidence that can be used to raise a genuine issue of material fact as to the existence of damages, (2) failed to view the evidence in the light most favorable to the nonmoving party, and (3) improperly made a credibility determination. We disagree.

A

On review of an order granting summary judgment, we engage in the same inquiry as the trial court. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 165 Wn.2d 679, 685, 202 P.3d 924 (2009). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. Berger v. Sonneland, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). Moreover, during a summary judgment hearing, a trial court "should not resolve a genuine issue of credibility." Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 626, 818 P.2d 1056 (1991). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

Notably, CR 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere

allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In the context of CR 56(e), "[a] fact is an event, an occurrence, or something that exists in reality."  Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359, 753 P.2d 517 (1988) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 813 (1976)), abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County, 189 Wn.2d 516, 404 P.3d 464 (2017).  Put differently, a fact "is what took place, an act, an incident, a reality as distinguished from supposition or opinion."  Grimwood, 110 Wn.2d at 359.  "The 'facts' required by CR 56(e) to defeat a summary judgment motion are evidentiary in nature.  Ultimate facts or conclusions of fact are insufficient.  Likewise, conclusory statements of fact will not suffice."  Grimwood, 110 Wn.2d at 359-60 (citation omitted); accord Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430, 38 P.3d 322 (2002).

B

Kormanyos and Managed Solutions assert that "the *only* evidence in the record as to the value of the stolen opportunity was a 2016 Vision Statement in which the parties expressed their mutual expectations."[4]  According to Kormanyos and Managed Solutions, the 2016 vision statement "expressed the mutual expectations of the parties regarding what revenues and profits they could expect their venture to yield, specifically as to the client designated GPO

---

[4] Br. of Appellants at 6.

(Group Purchasing Organization, a.k.a. 'Life Care').["5] Additionally, Kormanyos and Managed Solutions claim that the 2016 vision statement indicated "that the parties expected this business opportunity, at the time of the formation of their venture, to be worth $404,000."[6]

Kormanyos and Managed Solutions contend that "[n]othing in Washington law appears to hold that a joint statement of expectation as to the value of an asset cannot suffice to establish damages where that asset is subsequently lost."[7] Not so. As Kormanyos and Managed Solutions concede, the 2016 vision statement provided evidence of the parties' *expectation* of the value of the asset in question. In other words, the 2016 vision statement did not provide evidence of the value of the asset *in reality*. A fact, however, "is what took place, an act, an incident, a reality as distinguished from supposition or opinion." Grimwood, 110 Wn.2d at 359. The trial court correctly ruled that the 2016 vision statement did not create a genuine issue of material fact as to whether Kormanyos and Managed Solutions suffered damages.

Moreover, the trial court did not fail to view the evidence in the light most favorable to the nonmoving party. Kormanyos and Managed Solutions assert that the trial court's "declaration that 'you could have written down $2 trillion' was a particularly inappropriate basis to refuse to look upon the Vision Statement in the light most favorable to the Plaintiffs. There was no evidence that any such manipulation had occurred."[8] In making this statement, however, the trial court

---

[5] Br. of Appellants at 5.
[6] Br. of Appellants at 5.
[7] Br. of Appellants at 7.
[8] Br. of Appellants at 6.

merely explained that the 2016 vision statement did not provide any evidence as to the actual value of the asset. This vision statement set forth an aspiration, not a reality. See Grimwood, 110 Wn.2d at 359. The trial court did not fail to view the evidence in the light most favorable to the nonmoving party.

Finally, the trial court did not make an improper credibility determination. Kormanyos and Managed Solutions claim that the trial court "attacked Plaintiffs' credibility *sua sponte*, speculating that Plaintiff (Millicent Kormanyos) . . . could have written down any number she chose."[9] We disagree. The trial court did not attack Kormanyos's credibility. Rather, the trial court somewhat awkwardly explained why the 2016 vision statement did not raise a genuine issue of material fact as to whether damages had actually occurred.

The trial court did not err by granting the defendants' motion for summary judgment.

Affirmed.

_____

WE CONCUR:

_____          _____

---

[9] Br. of Appellants at 7.