IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JOHN BOESPFLUG, an individual, | ) | No. 83301-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF LABOR | ) | |
| AND INDUSTRIES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — John Boespflug appeals the summary judgment order

dismissing his claims of whistleblower retaliation under RCW 42.40.050. This

appeal presents an issue of first impression, whether we should apply the

McDonnell Douglas[1] burden-shifting scheme to a summary judgment of a claim of

whistleblower retaliation under RCW 42.40.050(1)(a) or whether we should apply

the statute's rebuttable presumption standard under section .050(2). But because

the outcome is the same under either standard, we need not decide this issue.

To avoid summary judgment on a whistleblower retaliation claim, the

employee must establish a prima facie case of retaliation: that the employee

engaged in a protected activity, that the employer took an adverse action, and that

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

the protected activity caused the adverse action. After the employee establishes a prima facie case of retaliation, under section .050(2), the burden shifts back to the employer to prove that there were "justified reasons" for the adverse action and that "improper motive" was not a substantial factor. Similarly, but not identically, under the McDonnell Douglas standard, the burden of production shifts back to the employer to show that there were "legitimate reasons" for the adverse action.[2] If the employer is successful, the burden of production shifts back to the employee to show that the employer's reasons were pretextual.[3]

Here, Boespflug establishes a prima facie showing that he is a whistleblower. There are questions of fact whether the failure by the Department of Labor & Industries (the Department) to provide him an ergonomic evaluation before assigning him a newer vehicle was a reprisal or retaliatory action, whether his whistleblower status caused his vehicle reassignment without an ergonomic evaluation, whether the Department's failure to conduct an ergonomic evaluation was "justified," and whether improper motive was not a substantial factor. And even if we apply the McDonnell Douglas burden-shifting scheme, Boespflug establishes that there are questions of fact regarding whether the Department's motivation in failing to conduct an ergonomic evaluation was pretextual.

Because Boespflug fails to establish that his other alleged acts of retaliation, present genuine issues of material fact under either the McDonnell

---

[2] Id. at 802.
[3] Id. at 797.

Douglas burden-shifting scheme or the rebuttable presumption of section .050(2),

the trial court properly granted summary judgment in favor of the Department as to

those alleged acts of retaliation.

Therefore, we affirm in part and reverse in part.

FACTS

Many of the underlying facts are undisputed. In 1987, John Boespflug was

hired as an electrical inspector and compliance officer for the Department. As an

electrical inspector, Boespflug's job was to ensure that electrical installations were

safe and satisfied the minimum safety codes. Boespflug was assigned to

inspection area 4 in the vicinity of Bonney Lake. In 2014, Jeffrey Ault became

Boespflug's supervisor.

In February 2015, Janet Morris, the regional administrator for the

Department, received a complaint from Rian Gorden, the owner of ERS Group

LLC, expressing his dissatisfaction with Boespflug's failure to call ahead before

arriving at inspection sites.

Later that month, Boespflug inspected a site in which Kraft Electric was

installing a new circuit for a tanning bed. After Boespflug's inspection, he wrote

warning citations to Kraft Electric. A few months later, Ault deleted Boespflug's

citations.

In March 2015, Boespflug inspected a Pacific Air Systems installation. As a

result of the inspection, Boespflug wrote various citations to Pacific Air. That May,

Ault sent Boespflug an e-mail stating that he had received complaints from various

contractors and requested that Boespflug follow standard work procedures and call ahead before arriving at inspection sites. In July, Boespflug received a call from Lauren Hines, a permit technician with the City of Bonney Lake, who informed him that Pacific Air had changed its corporate business license and therefore, the citations Boespflug issued were "moot."[4] In April 2016, Bob Matson, another inspector, told Boespflug that Ault deleted the citations he issued to Kraft Electric in 2015.

On April 21, 2016, Boespflug filed a complaint (whistleblower complaint number 1), with Nancy Kellogg, an assistant attorney general for the Department, expressing his dissatisfaction with Ault's handling of the citations he issued to Kraft Electric and Pacific Air.

In May 2016, Dixie Shaw, the human resources liability and prevention manager for the Department, investigated the allegations Boespflug made against Ault, which related to Ault's alleged favoritism of "certain customers and contractors."[5]

That June, Boespflug reinspected an ERS Group installation at an existing mobile home for a new accessory dwelling unit. Boespflug noted that the installation was "far from being in compliance" and issued nine corrections to ERS Group.[6] About a month later, the original inspector told Boespflug that the lead

---

[4] CP at 1319.
[5] CP at 188.
[6] CP at 2100.

electrical inspector, Michael Hulbert, asked him to "make [Boespflug's] inspection go away."[7]

In August, Ault received another complaint about Boespflug's failure to call ahead before arriving at an inspection site. That September, Ault sent Morris an e-mail asking her advice on how to ensure that Boespflug follows standard work procedures when he "flatly refuses" to call ahead before arriving at inspection sites.[8]

On September 6, 2016, Boespflug filed a complaint (whistleblower complaint number 2) with Cynthia Baxley-Raves, the Department's personal liaison to the state auditor, expressing his concerns with Ault's handling of the citations he issued to ERS Group. The next day, Baxley-Raves interviewed Boespflug. During the interview, Boespflug expressed his dissatisfaction with management, noting that Morris "has a difficult management style" and that Ault "is not competent."[9]

A month later, Shaw completed her investigation. Shaw concluded that there was "a lack of direct evidence" supporting Ault's alleged "favorable treatment" but recommended that the allegations be reviewed by a technical specialist within the electrical program.[10] Soon after, Rob Mutch, a technical

---

[7] Id.

[8] CP at 112.

[9] CP at 186.

[10] CP at 200.

specialist with the Department, provided a review of the inspection and suggested that various corrections be made to the citations Boespflug issued to ERS Group.

On October 26, 2016, Ault submitted a performance evaluation of Boespflug. In the evaluation, Ault stated that Boespflug was "above the office average" in conducting inspections, but noted that Boespflug needed to follow standard work procedures by "making access calls" before visiting inspection sites and "charging trip fees" for inspections.[11] On October 31, Morris reviewed Boespflug's performance evaluation.

Around this time, Boespflug inspected the City of Bonney Lake's Fennel Creek sewage lift station. As a result of this inspection, Boespflug wrote two corrections. At the direction of Stephen Thornton, the chief of the electrical program, Ault subsequently deleted Boespflug's corrections.

In November 2016, Ault attended a conference with the state auditor's office for a complaint that was filed against him for showing "favoritism to certain customers."[12] That month, Ault discovered that Boespflug was the complainant.

Between November and December 2016, Ault sent various e-mails to Boespflug asking him to follow standard work procedures, noting specifically that Boespflug failed to charge a trip fee when inspecting McCoy Electric's electrical installation and that he failed to correct various errors in the citations he issued to ERS Group.

---

[11] CP at 120.
[12] CP at 103.

6

On December 9, 2016, Boespflug filed a complaint with the Washington State Human Rights Commission (whistleblower complaint number 3) regarding Ault's handling of the citations Boespflug wrote to the City of Bonney Lake's Fennel Creek sewage lift station. In January 2017, Ault sent Boespflug an e-mail stating that he would be receiving a newer vehicle with snow tires. The Department did not conduct an ergonomic evaluation before assigning Boespflug his newer vehicle.

That February, Boespflug filed a complaint with the state auditor's office (whistleblower complaint number 4) expressing his concerns that a "Department employee [was] instructing electrical inspectors to approve installations that are not up to code."[13] That month, Boespflug's inspection area was relocated from inspection area 4, to inspection area 5, in the vicinity of Eatonville where Boespflug resided. Boespflug did not object to the inspection area relocation.

Boespflug sued alleging whistleblower retaliation under chapter 42.40 RCW. In June 2020, the trial court issued its oral decision granting summary judgment in favor of the Department. Boespflug filed a motion for reconsideration. In July, Boespflug filed a notice of appeal.

That August, the trial court granted Boespflug's motion for reconsideration in part, stating that Boespflug's vehicle reassignment presented issues of material fact sufficient to proceed to the jury. The Department moved to vacate the trial court's order on reconsideration because Boespflug's appeal was already pending.

---

[13] CP at 1557.

7

Neither party sought the permission of this court to allow the entry of the order on reconsideration. In September 2020, the trial court granted the Department's motion to vacate its order on reconsideration.

Boespflug appeals the summary judgment dismissing his claims.

ANALYSIS

I. Whistleblower Retaliation and the McDonnell Douglas Framework

As a preliminary matter, this case presents an issue of first impression, whether the proper framework for analyzing a whistleblower retaliation claim on summary judgment is the rebuttable presumption standard in the whistleblower retaliation statute, RCW 42.40.050, or under the McDonnell Douglas burden-shifting scheme.

Inherent in any actionable claim for retaliation are three concepts: (1) a protected activity, (2) an adverse action, and (3) a causal relationship between the protected activity and the adverse action.[14] As a consequence of this causal requirement, the employer or the agency must have knowledge or suspicion of the protected activity.[15] These concepts inherent to retaliation take the form of elements required for a plaintiff to establish a prima facie case of retaliation.[16] Specifically, they are the elements of a statutory cause of action for whistleblower retaliation under chapter 42.40 RCW.

---

[14] See RCW 42.40.050. Without a causal relationship, an action for retaliation would take the form of strict liability.

[15] RCW 42.40.050.

[16] Id.

In the area of discrimination, our courts have adopted the McDonnell Douglas burden-shifting scheme "[w]here a plaintiff lacks direct evidence" of the discrimination.[17] Under the McDonnell Douglas standard, a "plaintiff bears the initial burden of establishing a prima facie case," but once the plaintiff has satisfied their initial burden, there is "a presumption of discrimination."[18] Specifically, "[i]f the plaintiff satisfies the McDonnell Douglas burden of production requirements, the case proceeds to trial, unless the judge determines that no rational fact finder could conclude that the action was discriminatory,"[19] thereby making it easier on a plaintiff who may not have direct evidence of the discrimination.

The only published decision addressing a claim of whistleblower retaliation and the McDonnell Douglas burden-shifting scheme is Milligan v. Thompson.[20] But in Milligan, an employee asserted a claim under the Washington Law Against Discrimination, specifically, RCW 49.60.210, discrimination against a person opposing unfair practices.[21] The employee claimed that his employer "retaliated against him by denying him the chance to work on Indian related issues."[22] Consistent with all claims made under chapter 49.60 RCW, the court adopted the McDonnell Douglas standard and noted that to establish a prima facie case of

---

[17] Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014).

[18] Id. at 446.

[19] Id.

[20] 110 Wn. App. 628, 42 P.3d 418 (2002).

[21] Id. at 638.

[22] Id.

retaliatory discrimination on summary judgment, the employee must establish:

"(1) he engaged in a statutorily protected activity, (2) [the employer] took [an] adverse employment action against him, and (3) there is a causal link between the activity and the adverse action."[23]  The court also concluded that "[t]he burden-shifting scheme is the same [for retaliation claims] as for discrimination claims."[24]

The court's approach in Milligan is consistent with our unpublished decisions adopting the McDonnell Douglas burden-shifting scheme to claims of whistleblower retaliation under RCW 42.40.050, the statute at issue here.[25]  But no

_____

[23] Id. (citing Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 862, 991 P.2d 1182 (2000)).

[24] Id. (citing Wilmont v. Kaiser Aluminum & Chem. Corp., 118 Wn.2d 46, 68-69, 821 P.2d 18 (1991)).

[25] Notably, RCW 42.40.050(1)(a) expressly provides for a remedy under chapter 49.60 RCW.  In Woodbury v. City of Seattle, this court recognized the relationship between the statutes, stating that "Chapter 42.40 RCW is the analogous whistle-blower protection statute for state government, as opposed to local government, employees.  Chapter 49.60 RCW, Washington's law against discrimination, states that it includes whistleblowers as defined in chapter 42.40 RCW."  172 Wn. App. 747, 752, 292 P.3d 134 (2013) (citing RCW 42.40.050); see Budsberg v. Trause, No. 46658-8-II, slip op. at 7 n.1 (Wash. Ct. App. Nov. 17, 2015) (unpublished), http://courts.wa.gov/opinions/pdf/D2%2046653-8-II%20Unpublished%20Opinion.pdf ("Although Milligan addresses the standard for establishing a prima facie case for retaliation for opposing discriminatory practices under RCW 49.60.210, this standard is equally applicable to whistleblower retaliation because a whistleblower claim is derived from the same statute"); Mendoza de Sugiyama v. State Dep't of Transp., No. 45087-9-II, slip op. at 9 (Wash. Ct. App. Feb. 10, 2015) (unpublished), http://courts.wa.gov/ opinions/pdf/D2%2045087-9-II%20%20Unpublished%20Opinion.pdf ("RCW 42.40.050 and RCW 49.60.210(2) prohibit retaliation against a whistleblower.  To establish a prima facie case of retaliation, an employee must show that (1) she engaged in a statutorily protected activity (filing a whistleblower complaint), (2) the employer took an adverse employment action, and (3) the adverse action was caused by the employee's activity."); Rainy v. State Horse Racing Com'n, noted at 134 Wn. App. 1023, 2006 WL 2131741, at *5 (Wash. Ct. App. Aug. 1, 2006) ("RCW 42.40.050(2)'s language differs from the McDonnell Douglas burden-

published case has expressly addressed the rebuttable presumption contained in the 2008 and 1999 amendments to RCW 42.40.050.[26]

Recently, the California Supreme Court addressed a very similar issue in Lawson v. PPG Architectural Finishes, Inc.,[27] whether a whistleblower retaliation claim under California's Labor Code is governed by the McDonnell Douglas framework or the statutory presumption in section 1102.5.[28]  Similar to Washington's 2008 and 1999 amendments, in 2003, California added a procedural provision to section 1102.5.[29]  Specifically, section 1102.6 provides,

> In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5.[30]

---

shifting analysis by requiring the agency to show, by a preponderance of the evidence, that the agency's action was justified by reasons unrelated to the employee's whistleblower status.  Under McDonnell Douglas, the employer must simply articulate a legitimate nonretaliatory reason for the adverse employment action.  A McDonnell Douglas employee must then offer evidence that the employer's explanations are pretext.  RCW 42.40.050(2) says nothing about the state employee's burden, if any, to counter the state employer's nonretaliatory reasons for its conduct.  McDonnell Douglas deals with an obligation to produce evidence; RCW 42.40.050(2) deals with an obligation to persuade by a preponderance of the evidence.") (internal citation omitted).

[26] RCW 42.40.050(2).

[27] No. S266001, (Cal. Sup. Ct. Jan. 27, 2022), https://www.courts.ca.gov/opinions/documents/S266001.pdf.

[28] Id. at 1.

[29] Id. at 7.

[30] Id.

The court explained that the amendments were designed to "'encourage earlier and more frequent reporting of wrongdoing by employees and corporate managers when they have knowledge of specified legal acts by expanding employee protection against retaliation.'"[31] The court held that "section 1102.6, and not McDonnell Douglas, supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower retaliation claims."[32]

The California Supreme Court's holding in Lawson is inconsistent with the trend of our unpublished decisions that apply the McDonnell Douglas burden-shifting scheme to whistleblower retaliation claims. And the briefing here does not address all of the complexities acknowledged in Lawson.[33] But we need not decide this issue of first impression because here, the outcome is the same under the rebuttable presumption standard in RCW 42.40.050(2) and the McDonnell Douglas burden-shifting scheme.

---

[31] Id. (quoting Assem. Com. On Judiciary, Analysis of Sen. Bill No. 777 (2003-2004 Reg. Sess.), as amended May 29, 2003, p. 1).

[32] Id. at 9.

[33] For example, Lawson notes that some case law suggests that the McDonnell Douglas shifting burden of production scheme on motion practice may be compatible with the statutory rebuttable presumption because the first step of establishing a retaliation claim "requires plaintiffs to prove the employer's retaliatory intent." Id. at 11 (citing Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354, 8 P.3d 1089 (2000)). But other case law rejects that concept because "McDonnell Douglas is not the only possible method of proving discriminatory or retaliatory intent." Id. (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)).

II.  RCW 42.40.050

Boespflug contends that the trial court improperly granted summary judgment in favor of the Department because there are genuine issues of material fact sufficient to proceed to the jury on his whistleblower retaliation claims.

We review an order granting summary judgment de novo.[34]  "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[35]  We review the evidence in the "light most favorable to the nonmoving party."[36]  The motion should only be granted if "'reasonable persons could reach but one conclusion.'"[37]  However, bare assertions that a genuine issue of material fact exists will not defeat summary judgment.[38]

The whistleblower retaliation statute, RCW 42.40.050(1)(a) provides, "Any person who is a whistleblower, as defined in RCW 42.40.020, and who has been subjected to workplace reprisal or retaliatory action is presumed to have established a cause of action for the remedies provided under chapter 49.60 RCW."

---

[34] Trimble v. Washington State Univ., 140 Wn.2d 88, 92, 993 P.2d 259 (2000) (citing Benjamin v. Washington State Bar Ass'n, 138 Wn.2d 506, 515, 980 P.2d 742 (1999)).

[35] Id. at 93 (citing Clements v. Travelers Indem. Co., 121 Wn.2d 243, 249, 850 P.2d 1298 (1993); CR 56 (c)).

[36] Id. (citing Clements, 121 Wn.2d at 249).

[37] Id. (citing Clements, 121 Wn.2d at 249).

[38] Id. (citing White v. State, 131 Wn.2d 1, 9, 929, P.2d 396 (1997)).

First, the employee must establish that he is a whistleblower.

RCW 42.40.020 defines the term:

> (10)(a) "Whistleblower" means:
>
> (i) An employee who in good faith reports alleged improper governmental action to the auditor or other public official, as defined in subsection (7) of this section; or
>
> (ii) An employee who is perceived by the employer as reporting, whether they did or not, alleged improper governmental action to the auditor or other public official, as defined in subsection (7) of this section.
>
> (b) For purposes of the provisions of this chapter and chapter 49.60 RCW relating to reprisals and retaliatory action, the term "whistleblower" also means:
>
> (i) An employee who in good faith provides information to the auditor or other public official, as defined in subsection (7) of this section, and an employee who is believed to have reported asserted improper governmental action to the auditor or other public official, as defined in subsection (7) of this section, or to have provided information to the auditor or other public official, as defined in subsection (7) of this section, but who, in fact, has not reported such action or provided such information.

Subsection (7) defines a "public official" as the attorney general's designee or designees; the director, or equivalent thereof in the agency where the employee works; an appropriate number of individuals designated to receive whistleblower reports by the head of each agency; or the executive ethics board.

Second, the employee must establish that his employer took "adverse actions" against him.  RCW 42.40.050(1)(b) provides:

> For the purposes of this section, "reprisal or retaliatory action" means, but is not limited to, any of the following:

(i) Denial of adequate staff to perform duties;

(ii) Frequent staff changes;

(iii) Frequent and undesirable office changes;

(iv) Refusal to assign meaningful work;

(v) Unwarranted and unsubstantiated letters of reprimand or unsatisfactory performance evaluations;

(vi) Demotion;

(vii) Reduction in pay;

(viii) Denial of promotion;

(ix) Suspension; (x) Dismissal; (xi) Denial of employment;

(xii) A supervisor or superior behaving in or encouraging coworkers to behave in a hostile manner toward the whistleblower;

(xiii) A change in physical location of the employee's workplace or a change in the basic nature of the employee's job, if either are in opposition to the employee's expressed wish;
(xiv) Issuance of or attempt to enforce any nondisclosure policy or agreement in a manner inconsistent with prior practice; or

(xv) Any other action that is inconsistent compared to actions taken before the employee engaged in conduct protected by this chapter, or compared to other employees who have not engaged in conduct protected by this chapter.[39]

Third, the employee must establish that his "whistleblower activity" caused the "adverse actions." The employee can establish causation "by showing that retaliation was a substantial factor motivating the adverse employment decision."[40]

---

[39] (Emphasis added.)

[40] Allison v. Hous. Auth. of City of Seattle, 118 Wn.2d 79, 96, 821 P.2d 34 (1991).

Once the employee establishes a prima facie case of whistleblower retaliation under RCW 42.40.050(2), the burden shifts back to the employer to rebut the presumption of retaliation. Subsection (2) provides:

> The agency presumed to have taken retaliatory action under subsection (1) of this section may rebut that presumption by proving by a preponderance of the evidence that there have been a series of documented personnel problems or a single egregious event, or that the agency action or actions were justified by reasons unrelated to the employee's status as a whistleblower and that improper motive was not a substantial factor.

A. Whistleblower

Boespflug claims that he is a whistleblower under RCW 42.40.020(10). We agree.

First, on April 20, 2016, Boespflug filed an "ethics complaint" with Nancy Kellogg regarding Ault's handling of the citations he issued to Pacific Air and Kraft Electric. Kellogg is an assistant attorney general in the labor and industries division of the state attorney general's office who is designated to receive whistleblower reports. Because Boespflug filed a complaint of "improper governmental action" to an attorney general "designee," he is a whistleblower as to his first complaint.

Second, on September 6, 2016, Boespflug reported a complaint of "unethical behavior" to Cynthia Baxley-Raves regarding Ault's handling of citations Boespflug issued to ERS Group. Baxley-Raves is the Department's personal liaison to the state auditor's office for whistleblower complaints. Because Boespflug filed a complaint of "improper governmental action" to an employee

acting as liaison to the state auditor's office, he is a whistleblower as to his second complaint.

Third, on December 9, 2016, Boespflug filed a complaint with the Washington State Human Rights Commission regarding Ault's handling of citations that Boespflug wrote to the City of Bonney Lake's Fennel Creek sewage lift station. Boespflug complained to Jacqueline Hawkins-Jones, an investigator with the auditor's office, who recommended he submit a complaint to the Washington State Human Rights Commission. Because Boespflug reported a complaint of "improper governmental action" to an employee of the state auditor's office, he is a whistleblower as to his third complaint.

Fourth, in February 2017, Boespflug filed a complaint with the auditor's office expressing his concerns "about a Department employee instructing electrical inspectors to approve installations that are not up to code."[41] Because Boespflug filed a complaint of "improper governmental action" with the state auditor's office, he is a whistleblower as to his fourth complaint.

Boespflug establishes that he "engaged in statutorily protected activity" as a whistleblower for all four of his complaints.

B. 2016 Performance Evaluation

Boespflug argues that his 2016 performance evaluation was "unsatisfactory," constituting "reprisal or retaliatory action."[42]

---

[41] CP at 1557.

[42] Appellant's Br. at 36-37.

In October 2016, Boespflug received a performance evaluation from Ault, the author of the evaluation. In the evaluation, Ault states that Boespflug's "inspection stops" were "above the office average," that he "provides quality customer service," and that he "ensures the safety of Washington workers and citizens."[43]

But Ault also stated,

In working with you, I have observed that you do not follow standard work [procedures] by going directly to a jobsite without first making access calls, and ensuring that you will have access to perform your inspection. You leave a door hanger or message for the homeowner to call and arrange access, and you mark the inspection request as a recorded stop. This creates unnecessary delay and confusion for the customer, and causes extra work for those of us in the office that answer the customer calls. Also, standard work [procedures] indicate[ ] that if the department spends the resources to go to an inspection request, then a trip fee is charged to help pay for the resources that have been utilized.[44]

Even accepting that there are genuine issues of material fact whether the October 2016 performance evaluation was unsatisfactory, Boespflug must establish that his whistleblower activity caused Ault to give him the unsatisfactory performance evaluation. That requires a showing that when Ault made the evaluation, he knew or suspected Boespflug had engaged in protected activity.

In February 2015, Boespflug inspected a site in which Kraft Electric was installing a new circuit for a tanning bed. After the inspection, Boespflug issued

---

[43] CP at 1802, 1805.
[44] CP at 1805.

"four warning citations to Kraft Electric."[45] In April 2016, after discovering that Ault deleted his citations, Boespflug filed his first complaint. That June, Boespflug inspected ERS Group's mobile home service installation. In July, Boespflug discovered that the mobile home's service was approved even though Boespflug's corrections had not been made. The original inspector told Boespflug that he was asked to "make [Boespflug's] inspection go away."[46] That September, Boespflug filed another complaint. Boespflug contends that the first act of reprisal or retaliatory action occurred in October 2016 when he received an unsatisfactory performance evaluation from Ault. But Ault did not know that Boespflug was the complainant regarding his alleged "favoritism to certain customers" until November 2016, after he had submitted Boespflug's October 2016 evaluation.[47] And there is no evidence Ault suspected Boespflug had made complaints against him when he submitted the evaluation. Because retaliation is an "intentional act," an "employer cannot retaliate against an employee for an action of which the employer is unaware."[48] Therefore, Boespflug fails to establish that his whistleblower status caused his "unsatisfactory" performance evaluation. There are no genuine issues of material fact; the October 2016 evaluation does not support a violation of the whistleblower statute.

---

[45] CP at 2100.

[46] CP at 2100.

[47] CP at 103.

[48] Cornwell v. Microsoft Corp., 192 Wn.2d 403, 414, 430 P.3d 229 (2018) (citing Marin v. King County, 194 Wn. App. 795, 818, 378 P.3d 203 (2016)).

C. November and December 2016 E-mails

Boespflug contends that the e-mails he received from Ault regarding the McCoy Electric electrical installation and the citations he wrote to ERS Group constituted retaliatory reprimands.

In evaluating whether the e-mails from Ault to Boespflug amounted to reprisal or retaliatory action, the context and the content of the e-mails are critical.[49] As to the context, the undisputed facts reveal a history of customer complaints about Boespflug resulting in disagreements whether he was complying with standard work procedures including charging trip fees, and this history predated his whistleblower status.

As to the content, on November 28, 2016, Ault sent an e-mail to Boespflug regarding Boespflug's October 17 inspection of the McCoy Electric electrical installation. The essence of this e-mail is a request for additional information from Boespflug. For example, Ault asked Boespflug why he did not follow standard work procedures and charge a trip fee, noting that it appeared Boespflug wrote on a piece of cardboard "ok to insulate," and asked why he did not use other standard procedures to record the result of his inspection. Ault also asked if Boespflug granted permission to use rebar not connected to the footing or foundation or any other rebar as a ground. The next day, Boespflug sent an e-mail questioning whether there was a homeowner permit for the installation, why Ault had not documented the permit Ault had inspected, and why Ault did not document his

---

[49] See Kahn v. Salerno, 90 Wn. App. 110, 125, 951 P.2d 321 (1998).

approval of a wall covering. That same day, Ault responded by e-mail asking Boespflug to answer the questions as set out in his initial e-mail. On December 6, 2016, Boespflug responded, "Reviewed standard work. Trip fee at discretion of inspector. [N]on warranted."[50] Another inspector completed the project, but there was no other consequence to Boespflug.

Based upon this context, and the content of the request for more information, the undisputed facts do not support any reasonable inference that Ault engaged in retaliation in his November 28 and November 29 e-mails. The longstanding dispute between Boespflug and Ault regarding the standard work procedures, including charging for trip fees, preexisted the e-mails, and the request for additional information was not an unwarranted or unsubstantiated reprimand.

Similarly, after receiving a complaint from Gordon, the owner of ERS Group, Ault asked Faith Jeffrey, a compliance team specialist, to reinspect the ERS Group installation. Jeffrey found various gaps in the citations Boespflug wrote to ERS Group. On December 6, 2016, Jeffrey sent Ault an e-mail noting the key areas that Boespflug needed to correct. A few days later, Ault sent Boespflug an e-mail based upon Jeffrey's analysis of Boespflug's citations, which culminated in Ault asking Boespflug to resubmit the citations based on prior directions he had received such as to add photos to the file, clarify how he sent a compliance request to ERS Group, indicate whether he had actually followed-up with others,

---

[50] CP at 1613.

and explain whether he made a closing phone call. These undisputed facts do not reveal any act of retaliation in the form of an unwarranted or unsubstantiated reprimand. Instead, they establish a request that Boespflug address the specific points Jeffrey made in her review of the citations Boespflug issued to ERS Group.

Therefore, the November and December 2016 e-mails from Ault to Boespflug do not amount to unwarranted or unsubstantiated reprimands. There are no genuine issues of material fact.

### D. February 2017 Inspection Area Relocation

Boespflug contends that his inspection area relocation constituted reprisal or retaliatory action because the Department had never relocated him and therefore it was "inconsistent" conduct.[51]

In February 2017, after 29 years of working in Bonney Lake inspection area 4, Boespflug was reassigned to Eatonville, inspection area 5. And Boespflug filed his four whistleblower complaints in the months before he was assigned a new inspection area. But even accepting that there are genuine issues of material fact whether Boespflug's inspection area relocation was inconsistent conduct compared to actions the Department took before Boespflug was a whistleblower, Boespflug must establish that his whistleblower activity caused his inspection area relocation. Ault testified, "Everyone in my office has been assigned [to an inspection area] closer to their home to improve the[ir] quality of life."[52] Ault also

---

[51] Appellant's Br. at 38.

[52] CP at 70.

stated that Boespflug was being reassigned because of "[d]ocumented complaints and issues from the geographical location that he was inspecting previously."[53] Morris stated, "And it's always valuable if the inspectors move to different areas because different areas have different kinds of electrical problems. So it increases their knowledge, their experience, and those kind of things."[54] Thornton stated that "the reasoning for [relocation] originally [was due to] a large turnover in staff" and the Department's desire to make it more "convenient for the staff."[55]

Even viewing the evidence in the light most favorable to Boespflug, he does not establish that his status as a whistleblower was a substantial motivating factor in the Department's decision to relocate him to a different inspection area closer to home, the same as every other inspector.

Even if Boespflug could establish that his whistleblower status caused his inspection area relocation, the Department sufficiently rebutted his presumption of whistleblower retaliation under RCW 42.40.050(2). The Department established by a preponderance of the evidence that it had justified reasons for moving Boespflug's inspection area, namely, that the Department relocated all inspectors to inspection areas closer to their homes. Therefore, the undisputed facts rebut any presumption of whistleblower retaliation by demonstrating that there were justified reasons for the reassignment unrelated to his whistleblower status.

---

[53] CP at 2146.

[54] CP at 80-81.

[55] CP at 407, 1090-91.

E. February 2017 Vehicle Reassignment

Boespflug argues that his vehicle reassignment without an ergonomic evaluation constituted reprisal or retaliatory action because it was "inconsistent" conduct by the Department "compared to other employees."[56]

In January 2017, Ault sent Boespflug an e-mail notifying him that he would be receiving "a much newer vehicle with new snow tires."[57] Ault also stated that Boespflug's vehicle was being replaced because it had almost 115,000 miles on it, the amount of mileage triggering mandatory replacement.[58] But Boespflug did not receive an ergonomic evaluation before his vehicle was replaced. Bob Matson, a Department employee, stated that "an ergonomic evaluation is part of the process to getting any new or used vehicle by motor pool."[59] And Hulbert stated that before he was assigned a new vehicle, he received an ergonomic evaluation.

Therefore, viewing the evidence in the light most favorable to Boespflug, there are genuine issues of material fact whether the Department's failure to conduct an ergonomic evaluation was inconsistent compared to the treatment of other employees and was therefore a reprisal or retaliatory action.

The Department contends the testimony of Matson and Hulbert reveal that an employee must request such an ergonomic evaluation, and Boespflug made no such request. But that argument depends on viewing the evidence in a light most

---

[56] Appellant's Br. at 41-42.

[57] CP at 1605-08.

[58] Boespflug's vehicle had 105,444 miles on it. See CP at 44.

[59] CP 1042.

favorable to the Department.  Viewed in a light most favorable to Boespflug, especially the testimony of Matson regarding a standard practice, the evidence establishes genuine issues of material fact whether retaliation was a substantial factor in the Department's decision to issue Boespflug a newer vehicle without first conducting an ergonomic evaluation.

Under the rebuttable presumption of RCW 42.40.050(2), questions of fact remain whether the Department can rebut the presumption of retaliation by demonstrating justified reasons unrelated to Boespflug's whistleblower status. Therefore, a trial is required.

The Department argues that the proper framework for determining a whistleblower retaliation claim is the McDonnell Douglas burden-shifting scheme. Under the McDonnell Douglas framework, the plaintiff still must establish a prima facie case of whistleblower retaliation.  After the plaintiff has established a prima facie case, the burden shifts back to the employer to produce evidence of legitimate nonretaliatory reasons for the adverse employment actions.[60]  And after the employer establishes legitimate nonretaliatory reasons for their adverse action, the burden then shifts back to the employee to show that the employer's proffered reasons for the adverse actions were pretextual."[61]

Here, even if we apply the McDonnell Douglas standard to Boespflug's whistleblower retaliation claims on summary judgment, the outcome is the same.

---

[60] Scrivener, 181 Wn.2d at 446 (citing Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 363-64, 753 P.2d 517 (1988)).

[61] Id.

Because the testimony of Matson and Hulbert establish a question of fact whether an ergonomic evaluation was "standard procedure" before assigning an employee a newer vehicle, Boespflug establishes that there are genuine issues of material fact as to whether the Department's "legitimate" reasons were pretextual.

Because here the outcome is the same under both the rebuttable presumption standard in RCW 42.40.050(2) and the McDonnell Douglas burden-shifting scheme, we need not decide this issue of first impression.

III.  Cross Appeal

In its cross appeal, the Department argues that the trial court erred in considering various statements in witness declarations because the statements were hearsay.  But because we are reversing summary judgment only on the issue of Boespflug's vehicle reassignment, we need only address the hearsay statements in the Department's cross appeal pertaining to that issue.   The genuine issues of material fact as to Boespflug's vehicle reassignment are supported by the statements for which Boespflug, Hulbert, and Matson had personal knowledge.  There was no abuse of discretion in considering those statements on summary judgment.  We need not address hearsay issues on unrelated matters presented in the Department's cross appeal.[62]

---

[62] We note this opinion does not preclude the Department from raising specific hearsay and lack of personal knowledge objections at trial based upon the particular foundation offered at that time.

IV.  Attorney Fees

On remand, consistent with RAP 18.1(i), the trial court should determine whether Boespflug is entitled to attorney fees and costs under RCW 42.40.050 if he should prevail at trial.

Therefore, we affirm the summary judgment in favor of the Department except only the alleged act of retaliation involving the lack of an ergonomic evaluation for the selection of a replacement vehicle, which presents genuine issues of material fact.

We reverse in part and affirm in part.

_____

WE CONCUR:

_____          _____